772 P.2d 236

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Evan Glyn JONES, Defendant–Appellant.**

**No. 17506.**

Court of Appeals of Idaho.

March 29, 1989.

David A. Frazier, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

In this case, we review a magistrate's pretrial order suppressing evidence in a misdemeanor prosecution for driving while under the influence (DUI). The order was reversed upon appeal to the district court, precipitating this further appeal by Evan Jones, the driver charged with the offense. Like the district court, we also conclude the magistrate erred in ordering suppression of the evidence. Consequently, we affirm the district court's appellate decision remanding this case for further proceedings.

The evidence in question was obtained by a Coeur d'Alene city police officer when the officer stopped Evan Jones for making an illegal left turn. The evidence basically consists of everything the officer heard and saw after he stopped Jones, including verbal responses made by Jones to questions put to him by the officer, a description by the officer of Jones' general appearance and demeanor, the performance by Jones of field sobriety tests requested by the officer, and the results of a blood-alcohol concentration test conducted after Jones was placed under arrest. Jones moved to suppress the evidence prior to trial on the DUI charge in the magistrate division.

Following an evidentiary hearing, the magistrate granted Jones' motion. The magistrate held that although the officer had probable cause to stop and cite Jones for the turning violation, the evidence at the suppression hearing showed nothing about Jones' appearance, behavior or driving which would give rise to a reasonable and articulable suspicion that Jones was under the influence at the time he was stopped by the officer, sufficient to warrant further detention by the officer for investigation of DUI. On appeal by the state to the district court, I.C.R. 54.1(d), the district court held that the magistrate erroneously had restricted its consideration of the circumstances supporting the officer's basis for detaining and investigating Jones for a possible DUI. Applying a "totality of the circumstances" test, the district court found that the officer had a reasonable, articulable suspicion to pursue his investigation. The district court determined that the evidence produced by the officer was admissible. The district court reversed the magistrate's suppression order and remanded the case for further proceedings. Jones then brought this appeal from the district court's disposition.

When an appeal is taken from a district court's intermediate appellate decision, we consider the record independently of the decision of the district court while giving due regard to the district court's determination. *State v. Hopkins*, 113 Ida-

ho 679, 747 P.2d 88 (Ct.App.1987). Thus it is the decision of the magistrate, not the decision of the district court acting in its appellate capacity, upon which we focus. *State v. Swartz,* 109 Idaho 1033, 712 P.2d 734 (Ct.App.1985).

In reviewing the magistrate's decision, we defer to the court's findings of fact which are supported by substantial evidence. But we exercise free review over the magistrate's determination as to whether constitutional requirements have been satisfied in light of the facts found. *State v. Rusho,* 110 Idaho 556, 716 P.2d 1328 (Ct.App.1986). In the instant case, the "constitutional requirement" question concerns the existence of facts sufficient to establish that the Coeur d'Alene police officer had reasonable, articulable suspicion to detain and investigate Jones as a DUI suspect. Whether a detention is unreasonable, thus exceeding constitutional limitations, is a question of law. "A trial court's conclusion on such a point should not be lightly disregarded, but once review is sought the appellate court has the ultimate responsibility of measuring the facts as found by the trier against the constitutional standard of reasonableness." *State v. Allgood,* 98 Idaho 525, 529, 567 P.2d 1276, 1280 (1977). *See also State v. Burgess,* 104 Idaho 559, 661 P.2d 344 (Ct.App.1983).

The facts in this case were presented at the suppression hearing by way of testimony from the arresting officer and through introduction of the officer's arrest report. This evidence showed that, while on patrol duty on March 11, 1987, the officer received a radio call shortly after 7:00 p.m. from his dispatcher. The dispatcher reported a possible DUI driver in the vicinity of Fifteenth and Hastings Streets in Coeur d'Alene. The involved vehicle was described as a brown Cadillac displaying Montana license plates. The dispatcher related that the vehicle had been driven up over a curb, with the driver exiting the vehicle to relieve himself behind a Circle K store located on the corner of Fifteenth and Hastings. When the officer arrived at the Circle K parking lot, a man ran toward the patrol car, pointing excitedly at a brown Cadillac stopped at a nearby stop sign on Hastings and Fifteenth. The officer proceeded onto Fifteenth, following after the Cadillac.

The Cadillac traveled north on Fifteenth Street at a speed of twenty to twenty-five mph. It moved along the right-hand side of the street, described by the officer "as one would drive to park on the street next to the curb." Near an intersection, a parked vehicle was in the path of the Cadillac. As it approached the parked vehicle, the Cadillac turned left away from the parked car and out into the northbound traffic lane of Fifteenth. The officer described the maneuver, to avoid the parked vehicle, as "slow and smooth." The Cadillac then moved to the right, returning to the curbside and continued north on Fifteenth until it passed the eastbound entrance to the freeway, I–90. The vehicle slowed to about ten mph, then accelerated and, without moving into the marked left-turn lane, turned left from the right-hand or northbound lane of Fifteenth to enter the freeway, headed west. At that point, the officer decided to stop the driver of the Cadillac for suspicion of driving under the influence and for making an illegal left turn.

With his headlights on, the officer also activated his overhead lights and his spotlight. The officer followed the Cadillac for approximately a half mile before the Cadillac pulled over. The driver got out of the Cadillac and walked, without staggering or weaving, back to the patrol car. Upon request from the officer, he produced his driver's license—a Montana license issued to Evan Jones. The officer noted that Jones' eyes were slightly bloodshot, his face was "ruddy" and his speech was slow but clear. When Jones asked the officer if he, Jones, had done anything wrong, the officer told Jones about the report of a possible drunken driver, and asked Jones how much he had to drink that night. Jones replied that he had consumed one martini about ten minutes earlier. The officer then asked Jones if he would perform some field sobriety tests. At first Jones declined, expressing concern that his per-

formance of the tests might show some effect from the martini. However, he then agreed to undergo the tests after the officer advised Jones that he wanted to determine whether Jones was "fit to drive." Jones did not perform the tests satisfactorily. The officer placed Jones under arrest for DUI and took him to the local jail. There Jones agreed to an Intoximeter 3000 breath test to determine the percentage of alcohol in his blood. He blew into the machine twice, producing test results of .17% and .16%, respectively.

The officer testified that he formed the opinion that Jones was driving under the influence based upon "the information I got from the time of the dispatcher call until the completion of my field sobriety tests." At various points during his testimony, the officer indicated that the following items were considered by him in investigating Jones on suspicion of DUI: the dispatcher's report of a possible DUI involving a brown Cadillac near Fifteenth and Hastings; finding a brown Cadillac near that intersection; following the vehicle while it traveled at twenty to twenty-five mph in the right-hand portion of the lane "as if [it] were just about to stop and park along the curb;" observing that Jones had bloodshot eyes and a ruddy complexion; Jones' response to the officer's question whether Jones had had anything to drink, in order to determine whether Jones was fit to drive; and Jones' unsatisfactory performance of the field tests.

Based upon this evidence, the magistrate ruled that the officer had sufficient probable cause to make the traffic stop based upon the illegal left turn. The magistrate further ruled, however, that at the time the officer "made contact" with the defendant there was nothing about Jones' appearance, behavior or driving which would give rise to a reasonable and articulable suspicion that Jones was under the influence. The magistrate concluded that there was no basis to further detain Jones other than to issue a citation for an improper turn. As a result the magistrate ordered suppression of all evidence acquired by virtue of the stop and arrest of Jones.

We believe the magistrate misapplied the principles governing situations such as occurred here. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police have a right to stop and question a suspect in the absence of probable cause to make an arrest, where the officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. Applying *Terry*, the Idaho Supreme Court has said:

> Under *Terry* and under Idaho law, limited stops can be made for investigative purposes and to enhance the safety of the police officer who is conducting an investigation. If the officer's suspicions are confirmed or further aroused, the stop may be prolonged and the scope of the investigative stop enlarged. [Citation omitted.] The standard of proof which a state must satisfy in order to justify an investigatory stop is to be judged by a "totality of the circumstances." [Citations omitted.]

*State v. Johns*, 112 Idaho 873, 877, 736 P.2d 1327, 1331 (1987).

The limited stop, permitted by *Terry*, extends to motor vehicle operators, under certain circumstances. In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the Court said that:

> [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

440 U.S. at 663, 99 S.Ct. at 1401.

*Prouse* involved random stops of motor vehicles. Here it cannot be disputed that the officer was entitled to stop Jones' vehicle for the purpose of issuing a citation for an illegal left turn. However, the officer testified that his reason for effecting that stop was not only to issue the turning violation citation, but to investigate his suspicion that the driver of the vehicle was operating the Cadillac while under the in-

fluence. The magistrate essentially held that the officer's suspicion at that point was not reasonable and the ensuing investigation should not have occurred. In this regard we believe the magistrate unduly restricted its consideration of the legality of the officer's conduct. The magistrate did not view the facts under the "totality of the circumstances" test expressed in *Johns, supra.*

We find additional guidance in the opinion of the United States Supreme Court in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). There the Court held that responses to roadside questioning of a motorist, who was detained pursuant to a traffic stop for erratic driving, were admissible as evidence in his prosecution for DUI even though the motorist had not been given *Miranda* warnings previous to the questioning. During the questioning, the motorist admitted he had consumed two beers and had smoked some marijuana. Of particular interest in the present case, the Court said:

> [T]he usual traffic stop is more analogous to a so-called "Terry stop," see *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968), than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 45 L.Ed.2d 607, 95 S.Ct. 2574 (1975). "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'" *Ibid.* (quoting *Terry v. Ohio,* supra, at 29, 20 L.Ed.2d 889, 88 S.Ct. 1868 [1884]). Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The compara-

tively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda. [Footnotes omitted.]

468 U.S. at 439–40, 104 S.Ct. at 3149–50. We recently applied the rationale and holding of *Berkemer* in *State v. Hartwig,* 112 Idaho 370, 732 P.2d 339 (Ct.App.1987).

Here, Jones was neither in custody nor significantly deprived of his freedom when, as in *Berkemer* and *Hartwig,* he was asked by the officer about having consumed alcohol and to give other verbal responses to the officer's field sobriety tests, such as counting by numbers and repeating the alphabet. Jones could have refused to respond, or he could have responded in the negative to the officer's inquiries. This questioning, including the officer's request that Jones perform field sobriety tests, were reasonable attempts by the officer to "obtain information confirming or dispelling the officer's suspicions." *Berkemer, supra.* There is no suggestion that the officer's investigation exceeded reasonable bounds of time or intensity.

From our review of the facts found by the magistrate, we reach a conclusion of law contrary to that of the magistrate with regard to the legality of the detention and investigation conducted by the arresting officer. We hold that the officer's investigation was reasonably initiated and it reasonably continued until the officer's suspicion was confirmed. *See State v. Allgood, supra.*

Consistent with the determination made by the district court, the magistrate's suppression order is reversed and the case is remanded for further proceedings.

SWANSTROM, J., and HART, J., Pro Tem concur.