783 P.2d 874

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Rodney L. McAFEE,
Defendant–Appellant.**

No. 17560.

Court of Appeals of Idaho.

Dec. 5, 1989.

Roark, Donovan, Praggastis, Rivers & Phillips, Hailey, for defendant-appellant. Ray Keith Roark argued.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen. (argued), for plaintiff-respondent.

**1008**

SWANSTROM, Judge.

This appeal arises from an order suppressing evidence. Rodney McAfee stands accused of driving under the influence. He was arrested by two Ketchum police officers after they approached McAfee's parked van and ordered him to get out of the vehicle. A magistrate suppressed all evidence gathered while McAfee was outside the vehicle. On appeal, the district court reversed. In the present appeal, we must address two issues: whether the district court's reversal of the magistrate's suppression order is appealable under I.A.R. 11, and whether the arresting officers were required to have an articulable and reasonable suspicion of criminal activity or an emergency situation before they could properly order McAfee out of his van.

■■■ When reviewing a district court decision imparted in its appellate capacity, we examine the record before the magistrate independently of, albeit with due regard for, the district court's determination. *State v. Jones,* 115 Idaho 1029, 772 P.2d 236 (Ct.App.1989). A suppression order presents a mixed question of law and fact. On appeal, we defer to the trial court's findings of fact if they are supported by substantial evidence. But we will freely review the trial court's determinations as to whether constitutional requirements have been satisfied in light of the facts found. *See State v. Rusho,* 110 Idaho 556, 716 P.2d 1328 (Ct.App.1986). For the reasons that follow, we vacate the district court's reversal of the magistrate's suppression order.

On June 11, 1987, McAfee was observed at approximately 2:00 a.m., waiting in a van at a Ketchum stop sign for one or two minutes before abruptly turning the corner, parking at an adjacent curb and turning off the van's lights and engine. Two Ketchum police officers observed McAfee's conduct and parked their vehicle directly behind the van. At the suppression hearing, both officers testified that neither of them had any reason to suspect that the van was being operated in violation of any traffic laws or other criminal statutes.

Both claimed that there had been recent criminal activity in the area; thus, the erratic operating procedures, the late hour, and the fact that a van was well-suited for transporting burglarized property aroused their curiosity about the intentions of the driver. Additionally, the officers testified that they thought the van may have been experiencing mechanical problems due to the manner it was being operated. However, neither could particularize facts that may have lead them to think McAfee was having trouble with the van.

One officer called out to McAfee asking him to come out of the van. The other officer looked in the back of the van and saw part of McAfee's leg. McAfee did not hear the officer because he had fallen asleep. Finally, the officers were able to awaken McAfee, whereupon at the officers' direction he stepped out of the van from the passenger side. Once the officers were able to see McAfee outside the vehicle they determined that he might be intoxicated. The officers asked McAfee for his driver's license and requested him to perform some field sobriety tests. McAfee complied but failed the tests. He was then arrested and taken to the Ketchum Police Station. Once in custody, McAfee submitted to a blood alcohol test that revealed blood alcohol concentration levels of .210 percent and .221 percent respectively. The magistrate granted McAfee's motion to suppress the evidence of intoxication, holding that neither officer had any reasonable articulable suspicion, before ordering McAfee out of the van, that he had violated a traffic law nor any other criminal law. On appeal, the district court reversed the magistrate's suppression order based on the "whole picture" analysis set forth in *State v. Haworth,* 106 Idaho 405, 679 P.2d 1123 (1984), and upon the officer's "community caretaking function" as pronounced in *State v. Clayton,* 113 Idaho 817, 748 P.2d 401 (1988).

■■■ The state now argues that to allow McAfee to appeal the district court's decision would nullify sub-section (7) of Rule 11(c), I.A.R., which allows no appeal from a trial court's order *denying* a motion to

suppress.[1] We find no merit to this argument. We hold that once the state has taken an appeal from an order granting a motion to suppress under sub-section (7) and an appellate decision is obtained, then sub-section (10) of the rule is triggered and allows further appellate review.

■ The second issue focuses upon whether McAfee's fourth amendment rights were violated when the officers ordered him to exit his van. Whenever an officer detains a person—however briefly—a seizure has taken place. *Mason v. State Dept. of Law Enforcement*, 103 Idaho 748, 653 P.2d 803 (Ct.App.1982); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such a seizure is lawful if it is reasonable. *Mason, supra; U.S. v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). For an investigatory stop to be reasonable, it must be accompanied "by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) *reh'g denied* 455 U.S. 1008, 102 S.Ct. 1648, 71 L.Ed.2d 877 (1982). "The sufficiency of cause justifying an investigatory stop depends upon the totality of the circumstances. Based upon 'the whole picture,' the detaining officer must have a particularized and objective basis for suspecting the person stopped of criminal activity." *Mason*, 103 Idaho at 750, 653 P.2d at 805.

In *Mason*, an officer observed erratic driving—occupying two lanes of traffic—and he saw the driver collide with another vehicle while attempting to park. Upon exiting his vehicle, the driver was observed staggering and walking unsteadily while emitting an odor of alcohol. In *Clayton*, a police officer observed a vehicle parked next to a bar. The vehicle's lights were on, the engine was running, and Clayton was in the driver's seat with his head slumped forward. In both *Mason* and *Clayton*, the court found sufficient reasonable articulable suspicion to permit the officers to detain the motorists for further investigation.

■ However, McAfee did not drive erratically, nor was he slumped over the steering wheel. He parked, shut off the lights and engine, laid across the passenger seat and fell asleep. The magistrate found that the officers had not received any reports that may have aroused their suspicion of McAfee or his van. Nor was there testimony that the police were looking for a particular individual or vehicle wanted in connection with other criminal activities. The officers were simply suspicious because the van had stopped. McAfee was legally parked in a place where he had a right to be. Apparently no traffic laws or other law had been violated. Therefore, upon examining the " 'whole picture" ' of McAfee's situation, we conclude that there was no reasonable articulable suspicion that could form the basis of a lawful seizure.

Next, we examine the community caretaking function set forth in *Clayton*. *Clayton* adopted the view that local police, unlike federal law enforcement officers, "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what ... may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Clayton*, 113 Idaho at 818, 748 P.2d at 402, *quoting Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973). In holding that the officer acted properly in his caretaking function in response to the situation he faced in *Clayton*, the Court

---

1. Rule 11. Appealable judgments and orders.— An appeal as a matter of right may be taken to the Supreme Court from the following judgments and orders:

....

(c) Criminal Proceedings. From the following judgments and orders of the district court in a criminal action, whether or not the trial court retains jurisdiction:

....

(7) An order *granting* a motion to suppress evidence.

....

(10) Decisions by the district court on criminal appeals from a magistrate, either dismissing the appeal or affirming, reversing or remanding. [Emphasis added.]

said: "Tested upon practical considerations of everyday life on which reasonable persons act, this situation falls outside the boundaries of normal conduct." *Clayton*, 113 Idaho at 818, 748 P.2d at 402.

The state argues that, at the very least, the officers properly approached McAfee's van to talk to McAfee in order to assure themselves that he was not in danger and no criminal activity was afoot. The state urges that circumstances which justify investigative stops and detentions include unusual activities at unusual hours in high crime areas, or indications of distress or mechanical breakdown of vehicles. *United States v. Pajari*, 715 F.2d 1378 (8th Cir. 1983). We agree that circumstances such as those suggested may contribute to establish reasonable articulable suspicion. However, we disagree with the state's reliance on *Pajari*. In *Pajari*, the suspect was seated in his parked vehicle when the police pulled up behind him. Pajari was observed leaning down, apparently reaching beneath the front seat. The officers' original intent was to inform Pajari that they had a warrant to search his apartment and they wanted Pajari present. However, upon seeing Pajari reach under the seat, the officers assumed Pajari may have been reaching for a gun. They ordered him to raise his hands and exit his vehicle. *Pajari* is distinguishable from the instant case because the officers had an articulable reason to order Pajari out of the vehicle. In the present case, the Ketchum police had no articulable reason to give McAfee such an order. Although the officers may well have had a community caretaking basis to inquire as to McAfee's welfare, the record reflects no such inquiry before McAfee was ordered out of the vehicle. In so ordering, the police effected a seizure without the constitutionally required articulable reason.

The fact that McAfee lawfully hesitated at a stop sign for a longer period than usual, in the middle of the night, in an area where recent burglaries had taken place, does not rise to the articulable level of suspicion necessary for a seizure by the Ketchum police department. Citizens do not become prospective detainees merely because they are driving late at night and decide to lawfully park on a city street.

The district court's judgment is therefore vacated and the magistrate's suppression order is reinstated. This case is remanded to the magistrate division for proceedings consistent with this opinion.

BURNETT, J., and WESTON, J. Pro Tem., concur.