839 P.2d 38

STATE of Idaho, Plaintiff–Respondent,

v.

Brently Scott JORDAN, Defendant–Appellant.

No. 19625.

Court of Appeals of Idaho.

Sept. 28, 1992.

Alan Trimming, Ada County Public Defender and Mark F. Stewart, Deputy Public Defender, argued, Boise, for appellant.

Larry EchoHawk, Atty. Gen. and Douglas A. Werth, Deputy Atty. Gen., argued, Boise, for respondent.

WALTERS, Chief Judge.

Brently Scott Jordan pled guilty to driving while under the influence, a misdemeanor. I.C. § 18–8004. Jordan's plea was conditioned on his ability to appeal to the district court the magistrate's denial of his motion to suppress the results of his blood-alcohol and field sobriety tests. Jordan argued that the results should have been suppressed because he had done noth-

ing to arouse the police officers' suspicions when they walked up to his car as he was stopped at a red light and asked if he had been drinking. He claimed that the encounter violated his fourth amendment rights to be free from unreasonable searches and seizures. The district court affirmed the denial of the motion. We also affirm.

The facts may be stated briefly. On July 28, 1990, at about 11:30 p.m., Jordan and a friend were driving through downtown Boise. They stopped at a red light at the intersection of Main and Capitol streets. At the same time, two officers working the "downtown cruise" on foot patrol had stopped a car and its driver in an adjacent traffic lane because the car had an inoperable headlight. A passenger in the car told the officers that if they wanted to catch a drunk driver, they should inquire at the blue Malibu in the next lane. The officers did not know the person providing the information and told the people in the car to move along.

The officers walked over to the blue Malibu, Jordan's car.[1] The driver's window was down and one of the officers asked Jordan, who was driving, if he had been drinking. Jordan replied that he had "one to one-and-a-half beers." Sometime during the brief conversation, the officers detected the odor of alcohol coming from within the car. The record is unclear as to the exact sequence of these events. However, it is clear that after the short discussion and smelling of alcohol, the officers told Jordan to pull over to the curb.

Jordan was asked to perform several field sobriety tests, which in the officers' opinions he failed. He was arrested and given breath tests, which revealed blood-alcohol concentrations of .14 and .13. Jordan was then cited for driving while under the influence of alcohol.

Jordan moved to suppress all test evidence. The magistrate denied the motion, which was affirmed by the district court on appeal. On appeal to this Court, Jordan argues that the police did not have an articulable suspicion that he was involved in criminal activity, and therefore they could not justify their decision to stop and investigate him. He also argues that the police could not rely on the statement of the person who tipped them about Jordan's condition because they had no basis for trusting that person's information.

■■■ First, we note our standard of review. A trial court's decision on a motion to suppress presents mixed questions of law and fact. *State v. McAfee*, 116 Idaho 1007, 1008, 783 P.2d 874, 875 (Ct. App.1989); *State v. Jones*, 115 Idaho 1029, 772 P.2d 236 (Ct.App.1989). On appeal we defer to the trial court's findings of facts if they are supported by substantial evidence. *Id.* However, we freely review the trial court's determinations as to whether constitutional requirements have been satisfied in light of the facts found. *Id.* When reviewing a district court rendered in its appellate capacity, we examine the record before the magistrate independently of, but with due regard for, the district court's determination. *Id.*

■ The fourth amendment to the U.S. Constitution guarantees the right of every citizen to be free from unreasonable searches and seizures.[2] However, this guarantee is not so broad that every police-citizen encounter violates the person's constitutional rights. In other words, not every encounter constitutes a seizure. Articulating this concept, this Court has recently stated:

> A seizure does not occur simply because a police officer approaches an individual

1. We note that Jordan's car was identified on the citation form as a blue Chevy El Camino pick-up. We find this factual discrepancy to be unimportant because it is undisputed that the officers approached the car pointed out by the passenger in the first vehicle.

2. Neither party has argued, below or on appeal, that art. 1, § 17 of the Idaho Constitution, Ida-

ho's equivalent of the fourth amendment, should apply to afford greater protections than the fourth amendment in this case. Therefore, we restrict our analysis to the provisions of the United States Constitution. *See State v. Curtis*, 106 Idaho 483, 488 n. 4, 680 P.2d 1383, 1388 n. 4 (Ct.App.1984). We express no opinion whether the police conduct scrutinized here would pass muster under the Idaho Constitution.

on the street or other public place, by asking him questions, or by putting questions to him if he is willing to listen. *Florida v. Bostick,* [501] U.S. [——], 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Unless and until there is a detention, there is no seizure within the meaning of the fourth amendment and no constitutional rights have been infringed. *Royer,* 460 U.S. at 498, 103 S.Ct. at 1324. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *INS v. Delgado,* 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Thus, where an officer merely approaches a person who is standing on the street, or seated in a non-moving vehicle located in a public place, and poses a few questions, no seizure has occurred. *See United States v. Castellanos,* 731 F.2d 979 (D.C.Cir.1984); *United States v. Woods,* 720 F.2d 1022 (9th Cir.1983). ... [T]he critical inquiry is whether, taking into account all of the circumstances surrounding the encounter, "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick,* [501] U.S. at [——], 111 S.Ct. at 2387, *quoting Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988).

*State v. Osborne,* 121 Idaho 520, 523–24, 826 P.2d 481, 484–85 (Ct.App.1991). *See also State v. Godwin,* 121 Idaho 491, 826 P.2d 452 (1992); *State v. Hobson,* 95 Idaho 920, 523 P.2d 523 (1974); *State v. Fry,* 122 Idaho 100, 831 P.2d 942 (Ct.App.1992).

The vast majority of jurisdictions have held that "the mere approach and questioning of [persons in parked vehicles] does not constitute a seizure." W. LAFAVE, SEARCH AND SEIZURE § 9.2(h), at 415–16 and 408–09 n. 230 (2nd ed. 1987). The dividing line for fourth amendment purposes appears to be whether an officer unreasonably restricts the travel of a moving vehicle or restricts movements of the driver who has already stopped his vehicle, on his own volition. This view is supported by case law from other jurisdictions. For instance, in *Isam v. State,* 582 S.W.2d 441 (Tex.Crim.App.1979), the Texas appellate court affirmed the denial of a motion to suppress evidence in a case where two officers had seen Isam drive by while smoking what appeared to be a marijuana cigarette; the officers' act of following of Isam and then approaching his car on foot when it was stopped at a red light was not violative of the fourth amendment. The court held that Isam was not seized by any overt act of the officers until the officer told Isam to pull over after approaching the car and smelling the odor of marijuana. Before that instruction, the only limitation on Isam's movement was that imposed by the traffic light. Similar conclusions have been reached elsewhere. *See State v. Harlan,* 301 N.W.2d 717 (Iowa 1981) (no seizure where officer approached vehicle stopped with motor running to pick up passenger, and viewed driver who then appeared to be intoxicated); *State v. Foley,* 218 N.J.Super. 210, 527 A.2d 482 (1987) (no seizure occurred where officer merely spoke to occupants of vehicle already stopped at toll booth); *Carson v. Commonwealth of Virginia,* 12 Va.App. 497, 404 S.E.2d 919 (1991) (no seizure in violation of fourth amendment when officer observed car at toll booth and asked occupants questions; officer did not impede traffic or passage of the already stopped car).

■ Nevertheless, Jordan argues that he was seized the moment the police walked to his car and started asking him questions. We disagree. Substantial evidence is presented in the record that when the officers approached the car, it was already stopped on a public street. They asked Jordan several questions through his open window. There was no sign of authority or force to restrict Jordan's movement beyond the uniforms the officers wore and the fact that they wanted to talk to Jordan. Analytically, this case is no different than *Florida v.*

*Bostick* and *INS v. Delgado,* where the United States Supreme Court held that the restrictions on the subject's freedom of movement were imposed "by a factor independent of police conduct." *Bostick,* 501 U.S. at ——, 111 S.Ct. at 2387. In *Bostick,* the restriction was imposed by virtue of the means of travel selected by Bostick—he was the passenger on a bus stopped by its driver at a scheduled terminal. In *Delgado,* the restriction occurred as a result of the duties of employment and the factory where the subjects worked. Here, the restriction was caused by Jordan's location at a traffic control signal.

Jordan argues, however, that the questions asked by the officers gave him an impression that he was not free to go about his business; thus, he was seized. The record is imprecise on the exact questions asked, but it is clear they consisted of a variation of "Have you been drinking?" or "How many beers have you had?" He claims that the specificity of these questions communicated to him that he was under suspicion and could not ignore the officers. We are not persuaded by Jordan's argument. The test for whether a reasonable person would feel free to ignore the police presence and go about his business, as articulated in *Bostick* and *Osborne,* "presupposes an innocent person." *Id., citing Florida v. Royer,* 460 U.S. at 519 n. 4, 103 S.Ct. at 1335 n. 4. This "innocent person" standard ensures that the scope of fourth amendment protection does not vary with the state of mind of the individual being approached. *Bostick,* 501 U.S. at ——, 111 S.Ct. at 2388, *quoting Michigan v. Chesternut,* 486 U.S. at 574, 108 S.Ct. at 1979. An innocent person in Jordan's position, that is, someone who had not been drinking before getting behind the wheel, probably would have felt free to answer the officers' questions in the negative and go on his way. Further, he could have, without fear, refused to answer. As the Supreme Court has stated, "A refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Bostick,* 501 U.S. at ——, 111 S.Ct. at 2387. The questions posed by the police in this case were brief and pointed. That they were intended to discover specific information does not, by itself, implicate the fourth amendment. Thus, we hold that Jordan's movement was not restricted for fourth amendment purposes until he was told by the police to pull over to the curb. The record indicates that the officers did not give this instruction until after the officers approached the car and asked questions, Jordan told the officers he had been drinking and they smelled alcohol coming from within the car. Until he was told to pull to the side of the street, Jordan's ability to go about his business was limited only by the red light and the surrounding traffic.

Continuing his argument, Jordan asserts that whether his car was stopped by the police, or was stationary before the officers approached it, is irrelevant. For support he cites *State v. McAfee, supra,* in which this Court held that based on all the circumstances of the incident, the police did not have reasonable, articulable suspicion to awaken a man sleeping in his legally parked van and submit him to field sobriety tests. In that case, the officers had no indication that the driver had broken any laws before they rousted him from the van. He failed his field tests, prompting an incriminating blood-alcohol test and his arrest for driving while under the influence.

A close comparison of *McAfee* and the instant case reveals a subtle descriptive difference between the two, but a difference which does not alter the validity of our holding today. In *McAfee,* this Court did not expressly state when the defendant was seized. However, it is clear that the seizure occurred when the officers asked him to step out of the van. Before that act, the police had every right to approach the van and to ask questions, even if no obvious criminal activity was afoot. The defendant also was free not to respond to the officers' questions and to move away. In the instant case, there also was no seizure until Jordan was told to pull over.

Jordan asserts that when the police walked up to his car they had no articulable basis for suspecting him of drunk driving, so the encounter was an unreasonable sei-

zure. This argument is misplaced. The requirement of reasonable, articulable suspicion is a product of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny, and includes situations where an officer briefly detains a person for investigative purposes. In a *Terry* stop, the officer communicates to the detainee, either orally or through a show of force or authority, that he is not free to go about his business. Because the individual's freedom of movement is restricted, fourth amendment protections apply to assure that the minimal seizure is still reasonable.

Here, Jordan was not detained for fourth amendment purposes until after the police asked him to pull over. Presented with the information that Jordan had been drinking and upon smelling alcohol in the car, the officers had reasonable, articulable suspicion that Jordan may have been driving under the influence. They were then authorized to ask him to pull over and perform field sobriety tests. His failure of those tests established probable cause for his arrest and the administration of the breath test to determine his blood-alcohol content.

■ Jordan also argues that the police could not have relied on the statement by the passenger of the first car that Jordan had been drinking because the officers did not know the person giving the information and had no basis for trusting the statement. Jordan relies on *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), for the proposition that whether reasonable suspicion is supplied in an informant's tip to support an investigatory stop depends upon the quantity and reliability of the information presented. He also cites several cases in which evidence has been suppressed after the police, acting primarily on the advice of anonymous motorists, have stopped a person later arrested for drunk driving. In these cases, the officers did not observe the driver do anything to arouse the officers' suspicions and the informants did not possess the required indicia of reliability. *See State v. Black*, 80 Or.App. 12, 721 P.2d 842 (1986); *State v.*

*Tibbet*, 96 Or.App. 116, 771 P.2d 654 (1989); *Campbell v. State of Washington Department of Licensing*, 31 Wash.App. 833, 644 P.2d 1219 (1982). In *Campbell*, the court held that "without corroborative information or observation of wrongdoing, a police officer is not authorized to stop a moving vehicle solely on the basis that an anonymous passing motorist points to a vehicle and announces that it is being driven by a drunk driver." *Campbell*, 644 P.2d at 1220. The information supplied by the motorist lacks the required indications of reliability and by itself does not provide "well founded suspicion based on articulable facts." *Id.*

Whether the tip in the present case was more or less reliable than those in the above-cited cases is not controlling. The tip did not have to produce reasonable suspicion because there was no fourth amendment "stop" when the officers approached Jordan. *Bostick, supra.* The cases Jordan cites supporting suppression all involved officers who, by a show of authority, ordered a *moving* vehicle to pull over and stop, directly restricting the driver's ability to go about his business. In this case, Jordan's car was already stopped when the officers approached him. Jordan's movement was not restricted until after the officers independently learned that he had been drinking and asked him to pull over.

Focusing for a moment on sound public policy instead of a strict legal analysis, we find it unreasonable to impose upon the police a requirement that they corroborate every statement of wrongdoing offered by a citizen, especially a tip such as the one in this case. The information did not produce an unfounded investigatory stop, but a significantly less intrusive encounter; the tip pertained to a situation immediately at hand, which required prompt action if the officers were to investigate it. Importantly, the easiest, quickest, and least intrusive way for the two foot-patrol officers to substantiate the information was to walk to Jordan's car, which sat a few feet away from the source of the information.

In conclusion, we hold that the magistrate court did not err when it denied Jor-

dan's motion to suppress. The officers were able to approach Jordan's car, already stopped on a public street, and to ask a few questions through his open window. They did nothing to impede Jordan's movement until after independently learning that he had been drinking and was possibly driving under the influence. Though the anonymous tip provided the officers with the initial idea of approaching Jordan, the fourth amendment was not implicated at the time. Based on the foregoing, the denial of the motion to suppress is affirmed.

SWANSTROM and SILAK, JJ., concur.