861 P.2d 1250

In the Matter of the Suspension Of the Driver's License of Daniel F. MACKEY.

Daniel F. MACKEY, Petitioner–Appellant,

v.

STATE of Idaho, Respondent.

No. 20372.

Court of Appeals of Idaho.

Oct. 20, 1993.

Daniel P. Featherston, Sandpoint, for petitioner-appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

This is a driver's license suspension case. A Boundary County magistrate ordered

Daniel F. Mackey's driving privileges suspended because Mackey refused to perform a breath test for alcohol after being arrested for driving under the influence. On intermediate appeal, the district court affirmed. We also affirm.

The facts in this case are undisputed and establish the following: on April 2, 1992, David Kramer, chief of the Bonners Ferry, Idaho, police department, was on patrol in Bonners Ferry. At about 1:30 p.m., he saw Mackey driving north on Highway 95. Chief Kramer was on alert for Mackey's passenger truck due to a citizen's report, the nature of which is not revealed in the record. The chief followed Mackey for about four blocks and did not notice any traffic violations or suspicious or illegal activity. Mackey then pulled into a gas station and stopped, an act not prompted by Chief Kramer's presence. Chief Kramer pulled in behind Mackey and turned on his overhead signal lights. Not realizing that the chief was parked behind him, Mackey put his truck in reverse to back up, only to crash into the front of the patrol car.

While Mackey was exiting his truck, Chief Kramer approached on foot. Mackey told the chief that he had stopped to pick up supplies and not seen the patrol car before backing into it. Chief Kramer then noticed the smell of alcohol on Mackey's breath and asked him to perform field sobriety tests, which Mackey failed. Thereafter the chief arrested Mackey for driving under the influence in violation of I.C. § 18–8004. The chief requested Mackey to perform a breath test for alcohol but Mackey refused. The chief then seized Mackey's driver's license as authorized in I.C. § 18–8002(4)(a).

Following a hearing, the magistrate found that Chief Kramer made a valid investigatory stop after Mackey backed into the patrol car. The magistrate also found the smell of an alcoholic beverage on Mackey's breath produced a reasonable suspicion that Mackey may have been driving under the influence, thus prompting the field sobriety test. The magistrate further found that when Mackey failed the tests, the chief had sufficient probable cause to arrest Mackey for driving under the influence. Accordingly, the magistrate then suspended Mackey's driving privileges for 180 days for refusing the breath test. Mackey appealed to the district court, which affirmed. On appeal to this Court, Mackey asserts that he rightfully refused to perform the breath test because he was illegally seized when Chief Kramer activated his overhead lights without probable cause to stop Mackey at that time. *See* former I.C. § 18–8002(4)(b).

■ Because there are no factual disputes presented on appeal, we need only review whether constitutional requirements have been satisfied in light of the established facts. *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct.App.1992); *State v. Shepherd*, 118 Idaho 121, 122, 795 P.2d 15, 16 (Ct.App.1990). In other words, we freely review whether Mackey's encounter with Chief Kramer was one permitted under the Fourth Amendment to the U.S. Constitution. *State v. Osborne*, 121 Idaho 520, 523, 826 P.2d 481, 484 (Ct.App. 1992). Where, as here, the issues of law before us are the same as those considered by the district court sitting in its appellate capacity, we will examine the record independently of, but with due regard for, the district court's decision. *Matter of Von Krosigk*, 116 Idaho 520, 521, 777 P.2d 742, 743 (Ct.App.1989). We note that Mackey does not submit any persuasive argument or authority for the proposition that he was entitled to greater protection under the Idaho Constitution. *See Jordan*, 122 Idaho at 772 n. 2, 839 P.2d at 39 n. 2 (Ct.App.1992).

■ In the context of the Fourth Amendment, a seizure does not occur unless police conduct communicates to a reasonable person that he was not at liberty to ignore the police and go about his business. *Jordan*, 122 Idaho at 772–74, 839 P.2d at 39–41, *citing Florida v. Bostick*, 501 U.S.

——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Such conduct and communication may exist, however, and a motorist may be deemed seized for Fourth Amendment purposes, when a police officer activates the overhead lights of his patrol car. *See State v. Godwin*, 121 Idaho 491, 497 n. 3, 826 P.2d 452, 458 n. 3 (1992) (Bistline, J., dissenting); *State v. Langseth*, 492 N.W.2d 298 (N.D.1992). *But see State v. Hanson*, 504 N.W.2d 219 (Minn.1993) (no seizure when lights used when approaching stopped motorist); *State v. Gerrish*, 311 Or. 506, 815 P.2d 1244 (1991) (no seizure when officer turned on lights and signaled motorist to stop). No seizure occurs, however, until an officer actually restrains the person's liberty by physical force or show of authority. *State v. Zubizareta*, 122 Idaho 823, 826, 839 P.2d 1237, 1240 (Ct.App. 1992), *citing Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Osborne*, 121 Idaho 520, 523–24, 826 P.2d 481, 484–85 (Ct.App.1991). In other words, no seizure occurs until the person submits to the authority exhibited by the officer. *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992).

█ Chief Kramer testified that activating his overhead lights was a command to stop. It is undisputed, however, that Mackey did not stop in response to the lights. He was unaware of them, as he was unaware of Chief Kramer's presence until he backed into the patrol car. Therefore, it was impossible for Mackey to submit to the chief's authority as exhibited by the lights, and there was no seizure at the time. Mackey's assertion that he could not ignore Chief Kramer's presence even if he did not know that the chief was there, is without merit.

█ Mackey claims support in the fact that he was followed because of a citizen complaint, but did nothing wrong until he hit the patrol car. He asserts that the chief had no reason to turn on his lights before the accident. It is clear that Mackey's liberty to go about his business was not compromised by the activation of the lights because he was unaware and unimpeded by them. Once the accident occurred, however, Chief Kramer had an objectively reasonable basis for making an investigatory stop. His subjective motive or actual state of mind at that time, even if colored by a citizen complaint, was irrelevant. *See State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct.App.1990).

█ A driver whose license has been seized under I.C. § 18–8002 for refusing to take a breath test has the burden of showing why his or her license should be returned. I.C. § 18–8002(4)(b); *Matter of Griffiths*, 113 Idaho 364, 368, 744 P.2d 92, 96 (1987). As in effect in April, 1992, when Mackey's incident occurred, I.C. § 18–8002(4)(b) provided that the burden rested with the driver to establish that he could refuse the test because the "police officer did not have probable cause to stop and request him to take the test or that the request violated his civil rights." *See* 1992 Idaho Sess.Laws., ch. 133, § 1, p. 416 (changing "probable cause" to "legal cause," effective July 1, 1992). Mackey has failed to meet this burden.

Based on the foregoing, the decision of the district court, upholding the magistrate's order suspending Mackey's driving privileges, is affirmed.

No costs allowed, I.A.R. 40(a).

LANSING and PERRY, JJ., concur.