IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

CARLOS UBALDO GONZALEZ,
*Appellant*.

No. 2 CA-CR 2013-0296
Filed July 15, 2014

---

Appeal from the Superior Court in Pima County
No. CR20112829002
The Honorable Teresa Godoy, Judge Pro Tempore

**AFFIRMED**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By David A. Sullivan, Assistant Attorney General, Tucson
*Counsel for Appellee*

Angela C. Poliquin, Hamilton, Montana
*Counsel for Appellant*

---

**OPINION**

Judge Miller authored the decision of the Court, in which Judge Vásquez and Judge Howard concurred.

---

M I L L E R, Judge:

¶1        After a jury trial, Carlos Gonzalez was convicted of theft of a means of transportation and criminal trespass, and sentenced to a total of four years in prison.  He raises a single issue:  whether the trial court erred in concluding that a police officer investigating a suspicious activity call had not detained Gonzalez in his vehicle before discovering that he was smoking marijuana.  For the reasons that follow, we conclude Gonzalez was not detained prior to the officer smelling marijuana as he approached the vehicle.  Therefore, the court correctly denied the motion to suppress all evidence discovered after the officer detected the odor of marijuana.

**Facts Presented at Suppression Hearing**

¶2        In reviewing a motion to suppress, we consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling.  *State v. Hausner*, 230 Ariz. 60, ¶ 23, 280 P.3d 604, 614 (2012).   At the suppression hearing, a Marana police officer testified he was dispatched to a restaurant parking lot for a "suspicious activity call."  He learned from the dispatch that someone had called 9-1-1 and reported that she had seen three individuals, one sitting in a parked car and two outside the car.  One of the people outside the car was "looking over" at a neighboring business, and the other was talking on a cellular telephone.  The officer testified it was daylight and he believed the rental car company was closed at the time.

¶3        The officer testified that Gonzalez's car had been parked in a spot with a fixed barrier in front that prevented it from pulling forward.  The officer parked his vehicle at an angle about ten to fifteen feet behind Gonzalez, making it either difficult or impossible for Gonzalez to back out and leave without hitting the patrol car.  The officer did not turn on his sirens or spotlight, but did turn on his "rear deck" overhead lights, which flashed toward the back of his patrol car, so another vehicle would not "come in and hit [him] in the parking lot."   He did not believe the lights could be seen by someone in front of his car in daylight.

¶4          The officer testified that he got out of his patrol car and walked slowly and deliberately toward the car, without drawing his weapon. As he did so, he smelled marijuana.

¶5          At the suppression hearing, the key questions were whether a seizure had occurred before the officer smelled marijuana, and if so, whether he had reasonable suspicion at the time of the seizure. The trial court concluded that the car was blocked in, noting, "I think to argue [that Gonzalez could leave] would kind of defy physics." In its under advisement ruling, the court nevertheless denied the motion to suppress, relying on *State v. Canales*, 222 Ariz. 493, ¶¶ 7-9, 217 P.3d 836, 838 (App. 2009), and concluding that no seizure had occurred before the officer smelled marijuana because the officer had not done "something additional conveying to the parties involved that they were the subject of inquiry."

**Motion to Suppress**

¶6          Gonzalez argues the trial court erred in denying his motion to suppress the statements he had made to the police officer. He contends he was seized without reasonable suspicion in violation of his rights under the Fourth Amendment of the United States Constitution and Article II, § 8 of the Arizona Constitution.[1]

¶7          We review a denial of a motion to suppress for an abuse of discretion, but review constitutional issues de novo. *State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007). In a motion to suppress based on the lawfulness of the acquisition of evidence, the state carries the burden of persuasion. *State v. Hyde*, 186 Ariz. 252, 266, 921 P.2d 655, 669 (1996); *see also* Ariz. R. Crim. P. 16.2(b).

¶8          The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their

---

[1] Although Gonzalez raised an Arizona constitutional argument on appeal, he does not argue that Arizona's protections differ from those provided by the Fourth Amendment. We apply the same standard to his state and federal constitutional claims. *See State v. Thornton*, 187 Ariz. 325, 331 n.3, 929 P.2d 676, 682 n.3 (1996).

persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. But not all interactions between police officers and citizens result in a seizure of the person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A seizure requires either physical force or a show of authority to which the person submits. *See California v. Hodari D.*, 499 U.S. 621, 625-29 (1991); *see also State v. Guillory*, 199 Ariz. 462, ¶ 11, 18 P.3d 1261, 1264 (App. 2001).

**¶9** Both Gonzalez and the state rely on *Canales* to support their arguments. In *Canales*, a sheriff's deputy was dispatched to an apartment complex at night to investigate a suspicious vehicle. 222 Ariz. 493, ¶ 2, 217 P.3d at 837. The deputy parked behind a car matching the description of the vehicle and shined his patrol car's spotlight toward it. *Id.* When the officer got out of his car and walked to the suspicious car, he saw the defendant place a beer behind the passenger seat and smelled alcohol. *Id.*

**¶10** We upheld the trial court's grant of a motion to suppress, finding that Canales had been detained.[2] *Id.* ¶ 8. Specifically, we concluded that the deputy's actions in making it physically impossible for Canales to leave and shining the spotlight while approaching the driver's door "conveyed to Canales that he was the subject of the inquiry," and that "a reasonable person would not have believed he was free 'to disregard the police and go about his business.'" *Id.*, *quoting Hodari D.*, 499 U.S. at 628.

**¶11** The trial court distinguished *Canales* because the officer had not shined a light or taken other "additional action" other than blocking Gonzalez's car. The court found the officer "did nothing to convey to the parties involved that they were the subject of inquiry." Gonzalez contends the only difference is that the facts in *Canales* took place at night, while Gonzalez was detained during the day,

_____

[2] We also found lack of reasonable suspicion because the anonymous tip had provided no reliable information. *Id.* ¶ 16.

making the use of the spotlight as an additional show of authority unnecessary.

¶12        We agree that the officer's actions constituted the show of authority necessary for a seizure. When the officer pulled up behind Gonzalez's car in a marked police cruiser and blocked it into its parking space, Gonzalez could have been aware he was the subject of police inquiry, just as Canales was when the officer shined the spotlight at night. 222 Ariz. 493, ¶ 2, 217 P.3d at 837. Additionally, several federal circuit courts and state courts applying the Fourth Amendment similarly have held that blocking a parked vehicle with occupants inside may constitute a seizure. *See United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (noting spotlight in facts, but stating, "[W]hen [the officer] blocked the car in, he began an investigatory . . . stop"); *United States v. See*, 574 F.3d 309, 311-12 (6th Cir. 2009) (officer seized defendant by parking patrol car in front of parked vehicle so that it could not drive away); *United States v. Burton*, 441 F.3d 509, 511 (7th Cir. 2006) (bicycle officers seized vehicle stopped in roadway by placing bicycles so driver could not drive away); *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998) (blocking vehicle so occupant unable to leave during course of investigatory stop reasonable to maintain status quo while completing purpose of stop.); *Robinson v. State*, 754 S.E.2d 862, 866, 869 (S.C. 2014) (investigatory stop occurred when officer blocked vehicle in parking lot with patrol car); *People v. Wilkins*, 231 Cal. Rptr. 1, 2-3 (Cal. Ct. App. 1986) (defendant seized when officer parked behind parked vehicle "essentially blocking" any exit); *but cf. United States v. Kim*, 25 F.3d 1426, 1428, 1431 & n.2 (9th Cir. 1994) (noting in dicta that even fully blocking in vehicle with unmarked car may not have amounted to seizure because defendant could walk away).

¶13        But the fact the officer blocked Gonzalez's car does not end the analysis. Absent use of physical force, a defendant is not seized until he becomes "aware of and submit[s] to the assertion or display of police authority." *G.M. v. State*, 19 So. 3d 973, 977, 983 (Fla. 2009); *cf. Hodari D.*, 499 U.S. at 625-29 (finding fleeing person did not submit); *Guillory*, 199 Ariz. 462, ¶ 11, 18 P.3d at 1264 (same). "Where police seek to stop someone, but the subject is 'in fact

stopped . . . by a different means,' no seizure occurs." *Leaf v. Shelnutt*, 400 F.3d 1070, 1090 (7th Cir. 2005) (where two officers had guns pointed at man sleeping in bed, failure to flee could "be attributed to the fact that he was asleep" rather than due to show of authority), *quoting Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989).

¶14　　The officer testified that Gonzalez and the others never tried to leave in the vehicle and Gonzalez was not "looking back" when he pulled up. The court's own questions focused on the determinative issue: "Officer, as you were approaching did anybody in the vehicle do anything that indicated that they even saw you coming?" The officer answered in the negative.

¶15　　We find the reasoning persuasive and the facts similar to those considered by the Florida Supreme Court in *G.M. v. State*, 19 So. 3d 973 (Fla. 2009). There, police officers in an unmarked car were watching a group of juveniles sitting in and standing around vehicles in the parking lot of a public park. *Id.* at 974. The officers activated the emergency lights, drove to the parking lot, and parked behind the vehicles. *Id.* When one of the officers approached a vehicle, he saw G.M. in the backseat with his head lowered, rolling a "blunt" of marijuana. *Id.* at 974, 980. The court determined that although a reasonable person would not feel free to end an encounter of this nature and leave, its Fourth Amendment analysis necessarily relied on the fact that G.M. was not in a position to see the police vehicle and continued to engage in illegal conduct, supporting a conclusion that he "was not aware of the activated police lights and did not become aware of the police presence until [the officer] actually appeared at the window of the vehicle." *Id.* at 981.

¶16　　Viewing the facts in the light most favorable to upholding the trial court's ruling, we conclude the court did not err in its implicit determination that there was no submission to the show of authority before the officer smelled marijuana. *See U.S. v. Williams*, 413 F.3d 347, 349, 353 (3d Cir. 2005) (defendant who held up bag with leafy green substance while officers approached but before noticing officers and attempting to discard bag could not "persuasively claim that he submitted to a show of authority when he did not even see the officers approach"); *Tate v. People*, 290 P.3d

1268, 1270 (Colo. 2012) (officer testified defendant asleep, officer had to knock on window); *Houston v. State*, 925 So. 2d 404, 408 (Fla. Dist. Ct. App. 2006) (officers in plain clothes and defendant unaware they were officers); *Mackey v. State*, 861 P.2d 1250, 1251-52 (Idaho Ct. App. 1993) (defendant testified he had not seen patrol car before backing into it). The trial court did not err in denying the motion to suppress.

## Disposition

¶17 For the foregoing reasons, we affirm Gonzalez's convictions and sentences.