ROTHENBERG, Judge.
G.M. appeals the trial court’s denial of his motion to suppress the evidence seized in this case. Because there is competent substantial evidence to support the trial court’s factual findings, and the trial court correctly applied the law, we affirm.
The evidence presented at the hearing on G.M.’s motion to suppress is that Offi *530 cers Smith and Cuenca observed G.M. and a group of between six and eight individuals loitering in the park. G.M. alternated between sitting in a black Lexus parked next to another vehicle and standing outside the car talking to the others. The other individuals were also getting in and out of the vehicles. Because no one in the group was participating in park activities, and the police department had received reports of drug-related activity in the park, the officers decided to investigate.
The officers, who were in plain clothes and in an unmarked car, activated their emergency lights to identify themselves as police officers, crossed the street, pulled into the park behind the Lexus, and exited their vehicle. The motion to suppress reflects the following testimony by Officer Smith, which G.M. does not dispute:
Q. And when you approached the vehicles that the respondent was allegedly found in and that the other individuals were around, you put your sirens on, not your sirens, I’m sorry, your emergency equipment, is that correct?
A. Yes.
Q. And you also testified that you were wearing your badge when you exited your vehicle?
A. Yes
Q. Okay. Now the purpose of those sirens, I mean of that emergency equipment is not only to inform traffic of your motion or your situation, but it’s to inform people that you’re a police officer, isn’t that right?
A. Correct.
Q. And you used it in this case, because you were, as you stated, a plainclothes officer. You used that—
A. Used what?
Q. The equipment, the emergency equipment.
A. What kind of equipment?
Q. The equipment that you testified that you used.
A. The lights. I didn’t use the siren.
Q. Okay, the equipment that you used, you used to identify yourself as a Police Officer and advise these individuals that you were a Police Officer and that although you weren’t in Police clothes, you were in fact a Police Officer.
A. Yes.
Q. And that’s the same reason you wear your badge out.
A. Right.
Officer Smith testified that he exited his vehicle, and as he approached the Lexus, he could smell marijuana emanating from the vehicle. He explained that in addition to the smell of marijuana, as he approached the Lexus he could see G.M. sitting in the back seat rolling a marijuana cigarette. While initially G.M. did not see Officer Smith because he had his head down, G.M. eventually looked up, saw Officer Smith with his badge, and put the marijuana in his mouth, which he later spit out.
Officer Cuenca testified that he also smelled the marijuana as he was approaching the Lexus, and that although he could see G.M. sitting in the back seat of the car, he did not know if G.M. saw them.
G.M. testified that he learned that the officers were approaching the car that he was in when someone alerted him to the presence of police officers. He was not alone in the car at the time. G.M. admitted that he had the marijuana in his lap, he was rolling a marijuana cigarette, and when he learned the police were outside, he put the marijuana cigarette in his mouth.
G.M. argues that, because the officers activated their emergency lights when they drove into the park and stopped their *531 vehicle behind the parked vehicle G.M. was sitting in, the officers automatically converted what would otherwise constitute a consensual police encounter into a stop. We disagree. Based upon the totality of the circumstances, a standard we are required to apply, G.M. was not stopped by law enforcement, and there was no Fourth Amendment seizure.
STANDARD OF REVIEW
The trial court’s factual findings on a motion to suppress come to this Court cloaked with a presumption of correctness and must be sustained if supported by competent substantial evidence. San Martin v. State, 717 So.2d 462, 469 (Fla.1998); Rhodes v. State, 638 So.2d 920, 926 (Fla.1994). However, when the trial court’s ruling on a motion to suppress involves a mixed question of law and fact implicating constitutional questions, the ruling must be reviewed de novo. State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001); State v. Barmeier, 878 So.2d 411, 412 (Fla. 3d DCA 2004). Because G.M.’s argument, that he was “seized” when the officers activated their emergency lights, implicates G.M.’s Fourth Amendment protection against unreasonable seizures under both the Florida and the United States Constitutions, we must examine the evidence and all reasonable inferences in the light most favorable to sustaining the trial court’s ruling, while performing a de novo review of the trial court’s application of the law to the facts. Connor v. State, 803 So.2d 598, 605 (Fla.2001).
The State concedes, and we conclude, that when the officers activated the emergency lights of their unmarked vehicle and pulled into the park, they had no reasonable suspicion that G.M. or any of the individuals in or around the two vehicles parked in the park had committed or were committing a crime. It is equally clear that when the officers smelled marijuana coming from the black Lexus, the officers had reasonable suspicion to investigate, and when Officer Smith saw G.M. rolling a marijuana cigarette in the back seat of the Lexus as he and the other officer approached the vehicle, they had probable cause to arrest G.M. for possession of narcotics. The question we must resolve, therefore, is whether G.M. had been “seized” before reasonable suspicion and probable cause were established.
In resolving this question, we are bound by our state’s constitution, which requires that we follow the United States Supreme Court’s interpretation of the Fourth Amendment to the United States Constitution. Prior to 1982, Florida’s courts “were free to provide its citizens with a higher standard of protection from governmental intrusion than that afforded by the federal constitution.” State v. Lavazzoli, 434 So.2d 321, 323 (Fla.1983). However, in 1982, article I, section 12, of the Florida Constitution, relating to searches and seizures, was amended to link our exclusionary rule to the federal exclusionary rule and to require that we follow the United States Supreme Court’s interpretations of the Fourth Amendment and to provide no greater protection than those interpretations. Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988); see also Perez v. State, 620 So.2d 1256, 1258 (Fla.1993) (reaffirming the court’s earlier position in Bemie, and recognizing that by reason of the 1982 amendment to article I, section 12 of the Florida Constitution, the Florida Supreme Court was bound by the United States Supreme Court’s interpretation of the Fourth Amendment).
The United States Supreme Court has made it clear that law enforcement officers do not violate the Fourth Amendment’s prohibition against unreasonable seizures merely by approaching individuals on the *532 street or in other public places, Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), identifying himself or herself as a law enforcement officer, United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), or by posing questions and asking for identification. United States v. Drayton, 536 U.S. 194, 201, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002); see also Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (stating that a seizure does not occur simply because a police officer approaches an individual and asks a few questions).
In Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court specifically held that “only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred.” While recognizing that law enforcement officers may approach individuals in public places and briefly question them without reasonable suspicion and not violate the Fourth Amendment’s prohibition against unreasonable seizures, G.M. asks this Court to adopt a per se rule that where a police officer in a vehicle activates his or her emergency lights, the officer automatically converts a police encounter into a seizure. The United States Supreme Court has, however, noted in Dray-ton and Bostick that such per se rules are inappropriate in the Fourth Amendment context and that “[t]he proper inquiry necessitates a consideration of ‘all the circumstances surrounding the encounter.’ ” Drayton, 536 U.S. at 201, 122 S.Ct. 2105 (quoting Bostick, 501 U.S. at 439, 111 S.Ct. 2382).
Some of the factors relevant to this inquiry include:
whether a citizen’s path is blocked or impeded; whether identification is retained; the suspect’s age, education and intelligence; the length of the suspect’s detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.
United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir.1991). Similarly, in United States v. Ringold, 335 F.3d 1168, 1172 (10th Cir.2003), the court provided the following nonexhaustive list of factors:
[T]he threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer’s request is compulsory; prolonged retention of a person’s personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public.
To ignore these various factors and all of the surrounding circumstances, in favor of adopting a per se rule that the activating of flashing lights either in a marked or an unmarked police vehicle creates a Fourth Amendment seizure, would clearly violate federal law. In Bostick, the United States Supreme Court reviewed a decision by the Florida Supreme Court, adopting a per se rule that every police encounter on a bus constitutes a seizure under the Fourth Amendment. While the location of a police encounter is relevant, the United States Supreme Court held that it was error to adopt a per se rule based upon a single factor, and remanded the case for the Florida court to evaluate the seizure question under the correct legal standard, which requires a finding based upon the totality of the circumstances. Bostick, 501 U.S. at 437, 111 S.Ct. 2382.
*533 Based upon clear direction by the United States Supreme Court, requiring an analysis of all of the facts and circumstances in determining whether a seizure has occurred, we decline to adopt the per se rule argued by G.M., that the activation of emergency lights by law enforcement converts a police encounter into a seizure. We, therefore, review all of the facts and circumstances in the light most favorable to the State, to determine whether, prior to the officers smelling the marijuana and seeing G.M. in possession of a controlled substance, G.M. was seized in the Fourth Amendment context.
LEGAL ANALYSIS
The record reveals that the trial court applied the correct standard in ruling on G.M.’s motion to suppress the evidence by basing its determination on the totality of the circumstances. In denying the motion, the trial court found that based upon the totality of the circumstances, no seizure occurred until after the officers smelled the marijuana coming from the vehicle G.M. was seated in, establishing reasonable suspicion, and Officer Smith seeing G.M. in possession of marijuana, which provided the officers with probable cause to arrest G.M. We conclude that the trial court’s findings are supported by the record and the law.
The undisputed facts are that the encounter involved only one unmarked vehicle and two plain-clothes officers. The officers activated their emergency lights before pulling into the park because they were in an unmarked vehicle and in plain clothes, and they wished to identify themselves as police officers. When the officers pulled into the park, a public place, and parked behind the Lexus G.M. was seated in, there were two vehicles parked together at that location with several individuals both standing near and seated in the vehicles. When the officers exited their vehicle, they did not brandish nor draw their weapons. Before directing their attention toward any of the individuals in or near these two vehicles, and before addressing any of the individuals individually or collectively, the officers smelled marijuana coming from the open window(s) of the Lexus G.M. was seated in, and Officer Smith saw G.M. rolling a marijuana cigarette, with marijuana on his lap. At no time did G.M. testify that he saw the emergency lights flashing from the undercover police vehicle, and, in fact, he testified that he was alerted to the presence of law enforcement officers when one of the other individuals told him they were there. It is undisputed, based upon the testimony of the officers and G.M., himself, that G.M. did not see the officers pull up behind the Lexus with their fights activated, and did not see the officers until he was alerted by someone to their presence and looked up and saw Officer Smith, who was already outside the Lexus.
At the hearing on the motion to suppress, G.M. offered the following testimony:
Q. How did you know the Officers were at the car?
[After objection by defense counsel was overruled and counsel for the State was asked to repeat the question, the question was somewhat rephrased].
Q. How did you know the Officers were outside the car?
A. Someone told me.
[[Image here]]
Q. What did you do when the Officers approached?
A. I had Marijuana in my lap and I was rolling. I put it in my mouth.
G.M.’s testimony is consistent with that of the officers. Officer Smith testified that as he approached the Lexus, he smelled *534 marijuana emitting from the vehicle, and when he looked into the window, he saw G.M. rolling a marijuana cigarette with marijuana in his lap. Officer Smith testified that when he saw G.M. rolling the marijuana cigarette, G.M. had not seen him because his head was down, but when G.M. became aware of his presence, he put the marijuana in his mouth (and subsequently spit it out). Officer Cuenca testified that as he got out of his vehicle and was approaching the individuals standing near and sitting in the two parked vehicles, he smelled marijuana coming from the Lexus, but that he turned his attention to the other individuals in the vicinity when he saw Officer Smith approaching the Lexus.
We begin our analysis with the fact that there is no evidence in the record suggesting that G.M. saw the emergency lights of the officers’ vehicle prior to the officers smelling the marijuana coming from the vehicle G.M. was seated in and Officer Smith seeing G.M. in possession of the marijuana. The record supports a finding that he did not. The lights the officers employed were not mounted on top of a marked police vehicle, but were, instead, mounted somewhere within the unmarked vehicle. It was daylight (approximately 5:00 p.m. in the middle of the summer on August 8). G.M. was seated in a vehicle with his back to the approaching officers, his head was down, and he was busy rolling a marijuana cigarette from the marijuana he had in his lap. G.M. admitted when he testified at the motion to suppress that he did not know the officers were there until they were outside the car and someone told him they were there. We, therefore, conclude that the record before us overwhelmingly supports a finding that the activation of the emergency lights in this case did not play any role in G.M.’s actions and should not play a role in a Fourth Amendment analysis of the facts and circumstances of this case.
The remaining facts and circumstances clearly do not constitute a seizure. The vehicles were parked in a public place. G.M. was seated in the back seat of one of the vehicles. The officers did not brandish their firearms or surround the vehicle G.M. was in. Although the officers identified themselves as police officers, they did not order any of the individuals to “halt,” ask for identification, or question anyone until they smelled the marijuana coming from the Lexus and saw G.M. rolling a marijuana cigarette in plain view while they approached the parked vehicle he was in. Thus, under these facts and circumstances, no Fourth Amendment seizure occurred prior to the establishment of reasonable suspicion to investigate the smell of marijuana coming from the vehicle G.M. was seated in, and probable cause to arrest G.M. for possession of marijuana when Officer Smith approached the vehicle and saw him in possession of a controlled substance.
However, even if G.M. did see the emergency lights activated by the officers, we would find that this fact did not convert this police encounter into a Fourth Amendment seizure under federal law principles.
Recently, the Eleventh Circuit Court of Appeals found that the use of the officer’s blue lights to identify himself as a police officer, because he arrived at a scene in an unmarked car, did not convert the encounter into a Fourth Amendment seizure. See United States v. Perez, 443 F.3d 772, 778 (11th Cir.2006). The facts in Perez are as follows. Lt. Gonzalez observed several men loading a boat onto a trailer at approximately 1:00 a.m. Lt. Gonzalez activated the flashing blue lights of his unmarked vehicle and illuminated the scene with the car’s high-beam lights. Lt. Gonzalez, who was in uniform, approached the men, iden *535 tified himself as a police officer, asked for identification, asked who owned the boat, asked for the owner to provide registration for the boat, and asked why they were there so late at night. Perez invited Lt. Gonzalez to accompany him to retrieve the registration from the boat. When Perez opened a door leading to the cabin of the boat, Lt. Gonzalez saw four people inside, who he later learned, were Cuban nationals illegally entering the country. Perez filed a motion to suppress the evidence on Fourth Amendment grounds, the district court denied the motion, and Perez was convicted of smuggling aliens into the United States.
The district court found that Lt. Gonzalez’s initial encounter with Perez and the others was consensual, despite the fact that he flashed his blue lights and was in uniform. The court reasoned that Lt. Gonzalez did not tell the men they were being detained, did not remove his weapon, or otherwise do anything to suggest they were being detained. Id. at 775-76. The Eleventh Circuit Court of Appeals affirmed the district court’s denial of Perez’s motion to suppress, concluding that the circumstances constituted a consensual encounter and that the use by Lt. Gonzalez of his blue lights to identify himself as a police officer did not convert the encounter into a Fourth Amendment seizure. Id. at 778. The court specifically held that in “viewing the totality of the circumstances, there was no ‘show of authority that communicate[d] to the individual that his liberty [was] restrained, meaning he [was] not free to leave.’ ” Id. (citing United States v. Baker, 290 F.3d 1276, 1278 (11th Cir. 2002)).
If the facts and circumstances in Perez did not constitute a seizure, then the facts and circumstances in the instant case do not constitute a seizure. In the instant case, the officers were not even in uniform, they did not have an opportunity to ask any questions, nor to ask the individuals to produce any identification. The evidence establishes that before asking any questions or addressing any of the individuals, the officers smelled marijuana and saw G.M. in possession of marijuana, thus establishing reasonable suspicion and then probable cause to arrest G.M. for possession of a controlled substance.
In United States v. Chrispin, 181 Fed.Appx. 935 (11th Cir.2006), the United States Circuit Court of Appeals found that although Officer Lorente activated the flashing lights on the roof of his marked patrol car when he pulled into a parking lot to speak to Chrispin, who he observed walking from an alleyway to the parking lot at 10:30 at night, the encounter between the Officer and Chrispin was not a seizure to which the Fourth Amendment applied. Id. at 939; see also State v. Hanson, 504 N.W.2d 219, 219-20 (Minn.1993) (reversing the appellate court’s finding that whenever a police officer, with no reason to suspect criminal activity, drives up behind a parked vehicle and activates his or her flashing red lights, the encounter is converted into a Fourth Amendment seizure).
We agree with the trial court, that based upon the totality of the circumstances in the instant case, no seizure occurred prior to the establishment of reasonable suspicion and then probable cause to arrest G.M. There is no evidence that the officers blocked G.M.’s exit from the vehicle, and since G.M. was merely a passenger in the parked vehicle, his ability to drive away was not implicated. The officers did not order anyone to halt or order any of the occupants out of either vehicle. They did not question anyone, ask for identification, or unholster their weapons. They did not direct their attention toward anyone in particular or indicate in any way that the *536 individuals in the vicinity were not free to go. We, therefore, conclude that the activation of the officers’ emergency lights to identify themselves as police officers did not convert the encounter into a seizure. In fact, the officers demonstrated good police sense by activating their emergency lights when approaching six to eight individuals in an unmarked vehicle, especially when the officers were not in uniform.
We note that this is a case of first impression in this district and that this Court’s decision conflicts with prior decisions of other district courts of appeal in this state. To the extent that those decisions are based upon application of a per se rule holding that the use of emergency lights to identify officers as police officers when approaching an already stopped vehicle, constitutes a Fourth Amendment seizure, we certify direct conflict. See Armatage v. State, 954 So.2d 669 (Fla. 1st DCA 2007); Koppelman v. State, 876 So.2d 618 (Fla. 4th DCA 2004); Errickson v. State, 855 So.2d 700 (Fla. 4th DCA 2003); Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002); Siplin v. State, 795 So.2d 1010 (Fla. 2d DCA 2001); Hrezo v. State, 780 So.2d 194 (Fla. 2d DCA 2001); Brooks v. State, 745 So.2d 1113 (Fla. 1st DCA 1999). In certifying direct conflict with the opinions listed above, we note that the per se rule employed in the above-listed opinions is in direct conflict with United States constitutional law holding that such per se rules are inappropriate in the Fourth Amendment context. See Drayton, 536 U.S. at 201, 122 S.Ct. 2105 (admonishing that for the most part, per se rules are inappropriate in the Fourth Amendment context); Bostick, 501 U.S. at 437, 111 S.Ct. 2382 (remanding for evaluation under the correct, totality of the circumstances, legal standard).
Affirmed; conflict certified.
SALTER, J., concurs.