LEWIS, J.
This case is before the Court to review the decision of the Third District Court of Appeal in G.M. v. State, 981 So.2d 529 (Fla. 3d DCA 2008). The district court certified that its decision is in direct conflict with decisions of the First, Second, Fourth, and Fifth District Courts of Appeal on the issue of whether the activation of police lights is dispositive of a finding that an individual has been “seized” under the Fourth Amendment to the United States Constitution. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. As explained below, we conclude that per se rules remain disfavored under Fourth Amendment jurisprudence, and activation of police lights is only one important factor to be considered in a totality-of-the-circumstances analysis of whether a seizure in the constitutional context has occurred.
FACTS AND PROCEDURAL HISTORY
On August 8, 2006, Officers Smith and Cuenca, members of the Miami-Dade Police Department undercover narcotics unit, were in an unmarked vehicle parked on a public roadway across the street from a public park. In the past, the department had received complaints of persons using and dealing narcotics in the park which is adjacent to an elementary school. The officers observed several individuals standing next to a Lexus which was parked beside a second vehicle. On more than one occasion, G.M. exited the Lexus, appeared to speak with individuals standing outside, and then re-entered the car. The officers observed these individuals for approximately fifteen minutes. Although the individuals were not observed in any criminal behavior, the individuals were not engaged in what the officers considered “traditional” park activities. This caused the officers to activate the emergency lights of the unmarked vehicle and drive across the street into the park to approach the group.[1] The officers positioned the police vehicle approximately three feet behind the parked cars and exited the police vehicle. During the encounter, the officers were not in uniform but displayed visible badges on lanyards and possessed firearms — but the weapons remained in the holsters.
When Officer Smith approached the Lexus, he noticed that one or more of the windows of the Lexus were down and he smelled an odor of marijuana while observing smoke emanating from the car. When he looked in a window of the Lexus, Smith observed G.M. in the back seat with a substance that appeared to be marijuana and a “blunt” on his lap.[2] When G.M. *975 observed Officer Smith, and after Smith identified himself as a police officer, G.M. placed the marijuana in his mouth. Officer Smith then ordered G.M. to surrender the marijuana and G.M. complied. Officer Smith proceeded to recover the contraband and G.M. was officially placed in custody for possession of marijuana.[3]
In the juvenile proceedings that ensued, G.M. filed a motion to suppress the contraband. He contended that the officers illegally searched and seized him without any reasonable suspicion that he was engaged in criminal activity. During the hearing, when inquiry was made as to whether G.M. ever looked up as the officers approached, Officer Smith responded, “He had his head down when I first saw him because he didn’t see me coming from the back.” During cross-examination, Officer Smith acknowledged that prior to his approach in the unmarked car with emergency lights activated, he had not observed the commission of any crime. Officer Smith also expressed the view that at the time he first made contact with the individuals in and around the cars, they were not free to leave.
Officer Cuenca testified that when he exited the unmarked vehicle, he also saw G.M. seated inside the Lexus with the windows down and smelled a strong odor of marijuana emanating from the car. While Officer Smith directly interacted with G.M., Officer Cuenca positioned himself as security to watch the other individuals who were standing near the cars and to ensure that no one possessed weapons. Officer Cuenca testified that if any of the individuals had attempted to leave the area, he would have attempted to apprehend him or her for purposes of continuing the investigation.
G.M. testified that on the day in question, he had been at the park for approximately five-to-ten minutes and the windows of the Lexus in which he was seated were in the up position the entire time. When he was asked how he became aware that police officers were beside the car, G.M. simply responded that a second individual seated in the vehicle with him warned him of the police presence. When G.M. was asked what he was doing when the officers approached, G.M. replied, “I had marijuana in my lap and I was rolling. I put it in my mouth.” The trial court denied the motion to suppress, concluding that the interaction between the officers and the individuals in and around the two parked cars constituted a consensual encounter for which a reasonable articulable suspicion of criminal activity need not be demonstrated. Thereafter, G.M. pled no contest to the charge of possession of marijuana.
On appeal, the Third District Court of Appeal affirmed the trial court’s denial of the motion to suppress. See G.M. v. State, 981 So.2d 529, 529 (Fla. 3d DCA 2008). The district court specifically concluded that when the officers activated the emergency lights of their unmarked vehicle and entered the park, they had no reasonable articulable suspicion that G.M. or any of the individuals in or around the two vehicles had committed or were committing a crime. See id. at 531. However, the district court concluded that no illegal seizure had occurred because, in the constitutional framework, G.M. was not seized as a matter of law until after the officers smelled marijuana emanating from the vehicle in *976 which G.M. was seated — an independent factor which established a reasonable ar-ticulable suspicion to conduct an investigatory stop — and until Officer Smith observed G.M. in possession of marijuana, which provided probable cause for the arrest. See id. at 533.
The Third District first concluded that G.M. did not see the emergency lights and was not aware of the presence of the officers until Officer Smith was at the window directly outside the Lexus. See id. at 534. Based upon this determination, the district court stated that the activation of the emergency lights was not a factor in the actions of G.M. and, therefore, the activation of the emergency lights should not be considered in a Fourth Amendment totality-based analysis of the facts and circumstances of this case. See id. The district court then determined that the remaining facts surrounding the encounter did not establish a “seizure.” See id. (“The officers did not brandish their firearms or surround the vehicle G.M. was in. Although the officers identified themselves as police officers, they did not order any of the individuals to ‘halt,’ ask for identification, or question anyone until they smelled the marijuana coming from the Lexus and saw G.M. rolling a [blunt] in plain view....”).
The Third District then expanded the discussion to hold that, even if G.M. had seen the emergency lights, this fact would not convert the encounter into a seizure. See id. The district court reasoned:
There is no evidence that the officers blocked G.M.’s exit from the vehicle, and since G.M. was merely a passenger in the parked vehicle, his ability to drive away was not implicated. The officers did not order anyone to halt or order any of the occupants out of either vehicle. They did not question anyone, ask for identification, or unholster their weapons. They did not direct their attention toward anyone in particular or indicate in any way that the individuals in the vicinity were not free to go. We, therefore, conclude that the activation of the officers’ emergency lights to identify themselves as police officers did not convert the encounter into a seizure. In fact, the officers demonstrated good police sense by activating their emergency lights when approaching six to eight individuals in an unmarked vehicle, especially when the officers were not in uniform.
Id. at 535-36. After expanding the discussion to pass upon these questions, the Third District certified direct conflict with a number of district court decisions to the extent that those decisions apply a rule of law that the use of emergency lights to identify police officers when approaching a vehicle constitutes a “seizure” under the Fourth Amendment. See id. at 536. The Third District identified Armatage v. State, 954 So.2d 669 (Fla. 1st DCA 2007); Koppelman v. State, 876 So.2d 618 (Fla. 4th DCA 2004); Errickson v. State, 855 So.2d 700 (Fla. 4th DCA 2003); Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002); Siplin v. State, 795 So.2d 1010 (Fla. 2d DCA 2001); Hrezo v. State, 780 So.2d 194 (Fla. 2d DCA 2001); and Brooks v. State, 745 So.2d 1113 (Fla. 1st DCA 1999), as cases in conflict.
Below, one judge agreed with the decision to certify conflict to this Court, but dissented from the majority opinion and concluded that the trial court should have granted the motion to suppress. See id. at 536^14. Specifically, that one judge concluded that under the totality of the circumstances, an unlawful seizure occurred:
When the police officers in this case parked their unmarked vehicle directly behind a lawfully parked ear in a parking lot in which G.M. was seated and *977 announced their arrival by activating their police emergency lights, G.M. was unlawfully seized for purposes of the Fourth Amendment because the officers had no reasonable suspicion that G.M. had committed any crime. By virtue of the show of police authority presented under this factual scenario, it is both patently unreasonable and potentially dangerous for any citizen to believe that he or she was immediately free to drive, run, or walk away from these police officers.
Id. at 536. The dissenting judge also opined that while the individuals who were around the vehicles may not have been engaged in “traditional” park activities, engagement in such conduct was not required to insulate them from an unlawful police encounter. See id. at 544.
On September 9, 2008, we accepted review of G.M. based upon the certification of conflict. See G.M. v. State, 996 So.2d 858 (Fla.2008) (table).
ANALYSIS

Seizures Under the Fourth Amendment

The Fourth Amendment to the United States Constitution and section 12 of Florida’s Declaration of Rights guarantee citizens the right to be free from unreasonable searches and seizures. The Florida Constitution expressly provides that this right must be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. See art. I, § 12, Fla. Const. Items obtained in violation of Florida’s constitutional protection shall be excluded from evidence if those items would be excluded pursuant to the jurisprudence of the United States Supreme Court. See id.
The United States Supreme Court has determined that the Fourth Amendment requires legal “seizures” of a person to be based upon reasonable, objective justification, usually expressed in Fourth Amendment jurisprudence as a reasonable articulable suspicion that the individual seized is engaged in criminal activity. See Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (reasonableness will depend on the existence of “specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion”). The requirement for reasonable, objective justification governs all seizures, including those that involve only a brief detention short of traditional arrest. See United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).
However, every encounter between law enforcement and a citizen does not automatically constitute a seizure in the constitutional context. See Terry, 392 U.S. at 19 n. 16, 88 S.Ct. 1868 (“Obviously, not all personal intercourse between policemen and citizens involves ‘seizures’ of persons.”). As the United States Supreme Court has determined:
Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a “seizure” has occurred.
Id. In Popple v. State, 626 So.2d 185 (Fla.1993), we defined three levels of police-citizen encounters. The first is the “consensual encounter,” which involves minimal police contact and does not invoke constitutional safeguards. See id. at 186. During a consensual encounter, an individual may voluntarily comply with or ignore the request of a police officer. See id. The second is the “investigatory stop,” under which an officer may detain a citizen temporarily if the officer has a reasonable articulable suspicion that the person has committed, is committing, or is about to *978 commit a crime. See id. The third level is an arrest, which must be supported by probable cause that a crime has been or is being committed. See id.
In the absence of a formal arrest, whether a person has been seized in the constitutional framework will be judged in accordance with the reasonable-person standard articulated by the United States Supreme Court in United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). There, a plurality of the Court stated:
We conclude that a person has been “seized” within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.
Id. at 554, 100 S.Ct. 1870 (emphasis supplied) (footnote omitted).[4] The United States Supreme Court has consistently maintained that per se rules are inappropriate in Fourth Amendment analyses of whether a “seizure” has occurred. Instead, as expressly recognized in Menden-hall, the totality of all the circumstances surrounding the specific encounter must be considered. See id.; United States v. Drayton, 536 U.S. 194, 201, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002); Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).
Subsequent to the Mendenhall decision, the United States Supreme Court clarified that for a “seizure” to have occurred, one of two additional criteria must be satisfied: either the person must be physically subdued by a police officer or the person must submit to the officer’s show of authority. See California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). In Hodari D., when two officers in an unmarked police vehicle approached a group of youths, the youths fled. See id. at 622-23 111 S.Ct. 1547. While one of the officers chased Hodari, he observed Ho-dari discard what appeared to be a small rock. See id. at 623, 111 S.Ct. 1547. The officer tackled Hodari and the discarded rock was later found and determined to be cocaine. See id. During the juvenile proceedings that ensued, Hodari sought to suppress the evidence related to the cocaine. See id. The trial court denied the motion, but the California appellate court reversed, holding that Hodari was seized when he saw the officer running toward him and this seizure was unreasonable under the Fourth Amendment. See id.
However, the United States Supreme Court reversed, concluding that Hodari was not seized until the officer actually tackled him during the chase — which occurred after Hodari had abandoned the cocaine. See id. at 629. The High Court rejected Hodari’s contention that he had been seized before the tackle on the basis that the officer’s pursuit qualified as a “show of authority”:
Respondent contends that his position is sustained by the so-called Mendenhall test ...: “[A] person has been ‘seized’ *979 within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” 446 U.S., at 554[, 100 S.Ct. at 1877]. In seeking to rely upon that test here, respondent fails to read it carefully. It says that a person has been seized “only if,” not that he has been seized “whenever”; it states a necessary, but not a sufficient, condition for seizure — or, more precisely, for seizure effected through a “show of authority.” ...
[A]ssuming that [the officer’s] pursuit in the present case constituted a “show of authority” enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled.
Id. at 628-29, 111 S.Ct. 1547 (citation omitted). For this reason, the Supreme Court concluded that the cocaine abandoned by Hodari as he ran was not the product of a seizure under those circumstances and, therefore, the motion to exclude the cocaine evidence was properly denied.
Thus, pursuant to the holding of the United States Supreme Court in Hodari D., a show of authority under those circumstances in which a defendant has not yielded to authority is not a seizure.

Per Se Rules

The United States Supreme Court has not receded from the longstanding principle that per se rules are inappropriate in the context of Fourth Amendment seizure analyses. Therefore, to the extent that the conflict cases stand for the absolute and inflexible proposition that activation of police lights alone always constitutes a seizure, we agree with the Third District that these decisions are inconsistent with Fourth Amendment precedent and United States Supreme Court structure for analysis of these cases. Instead, the activation of police lights is one important factor to be considered in a totality-based analysis as to whether a seizure has occurred. Indeed, other state courts have held that the activation of police lights alone did not constitute a seizure under circumstances where a motorist was stopped on a public roadway and the officer activated his or her lights either to indicate to other motorists that a car was parked on the roadway, or where the defendant gave some indication that he or she might be in need of assistance. See, e.g., Commonwealth. v. Evans, 486 Mass. 369, 764 N.E.2d 841, 843 (2002) (car parked in the breakdown lane of highway with turn signal flashing at 11:30 p.m.); State v. Johnston, 85 Ohio App.3d 475, 620 N.E.2d 128, 129 (1993) (defendant drove into lot and parked next to officer’s vehicle in a manner which indicated to the officer that the defendant wished to speak with him); State v. Blair, 171 Or.App. 162, 14 P.3d 660, 665 (2000) (van slowly rolling down road, straddling the fog line of a busy highway in a dark area with hazard lights on).

The Present Case

Despite our approval of the Third District’s conclusion with regard to the general inappropriateness of per se rules in the Fourth Amendment analysis context, we cannot agree with its further conclusion that, even if G.M. had been aware of the emergency lights, a seizure would not have occurred under the totality of the circumstances here. See G.M., 981 So.2d at 534. The record reflects that the officers rapidly crossed the public street in their vehicle with emergency lights activated, entered the park, and positioned the police vehicle behind the two parked cars around which the individuals were congregating.[5] There *980 is absolutely no indication that the officers believed the individuals to be in need of aid, and the individuals certainly did not exhibit conduct to indicate that they sought police assistance. Cf. Evans, 764 N.E.2d at 843; Johnston, 620 N.E.2d at 129; Blair, 14 P.3d at 665. The officers, although not in uniform, exhibited badges and possessed handguns as they exited the vehicle. Finally, while one officer approached the Lexus, the second officer positioned himself to observe the individuals and was prepared to apprehend anyone who attempted to leave the area.
It strains the bounds of reason to conclude that under these circumstances, a reasonable person would believe that he or she was free to end the encounter with police and simply leave. See Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870. Moreover, it would be both dangerous and irresponsible for this Court to advise Florida citizens that they should feel free to simply ignore the officers, walk away, and refuse to interact with these officers under such circumstances. Instead, as a matter of safety to both the public and law enforcement officers, we conclude that a citizen who is aware of the police presence under the specific facts presented by this case is seized for Fourth Amendment purposes and should not attempt to walk away from the police or refuse to comply with lawful instructions.
Our disapproval of this portion of the Third District’s decision, however, neither ends our analysis nor is it dispositive of our ultimate holding in this case. This is because the parties dispute the point at which G.M. became aware that law enforcement had arrived and he was not free to leave. The State contends that G.M. did not know the police had arrived until he actually saw Officer Smith at the car window and that he had not seen the emergency lights prior to that time. Conversely, G.M. contends that he observed the emergency lights and knew of the police presence before Officer Smith appeared at the window of the vehicle. Neither the Third District nor the trial court ever addressed a specific finding with regard to whether and when G.M. observed and was aware of the emergency lights. The Third District essentially concluded that under either situation, G.M. was not seized until probable cause existed to arrest him, and the district court did not definitively decide when G.M. became aware of the lights.
The trial court ruled in favor of the State when it denied the motion to suppress. Therefore, it appears that the trial court credited the testimony of Officer Smith, who testified that G.M. had his head lowered while he was rolling a “blunt” and, thus, G.M. was not positioned to see the officer until the officer actually appeared beside the window of the vehicle occupied by G.M. That conclusion is fully supported by the record. Indeed, even G.M.’s own testimony and his behavior at the scene are consistent with a person who *981 was not aware of the emergency lights or the police presence until the officer was at the window. When asked about his conduct when he first observed Officer Smith at the window, G.M. replied, “I had marijuana in my lap and I was rolling.” The police vehicle was positioned behind the parked vehicles, and G.M. was seated with his back toward the unmarked vehicle and his head lowered. It is logical to conclude from this evidence that G.M. did not see the emergency lights at that time, nor was he aware of the police presence until Officer Smith actually appeared at the window beside him. G.M.’s conduct is inconsistent with a person who has observed police lights and the presence of law enforcement. G.M. did not place the marijuana in his mouth until after Officer Smith appeared at the window and identified himself. If G.M. had been aware of the lights or the police presence, logic dictates that he would have attempted some furtive action before Officer Smith appeared at the car window, and the officer would not have seen and smelled the smoke or found G.M. with the marijuana in plain view. Therefore, our Fourth Amendment analysis of when G.M. was seized is based upon a conclusion that G.M. was not aware of the activated police lights and did not become aware of the police presence until Officer Smith actually appeared at the window of the vehicle in which he was seated.
As previously noted, the decision in Ho-dari D. requires that the display of police authority be the cause of or produce the submission before it can be said that a seizure has occurred. See 499 U.S. at 626, 111 S.Ct. 1547. Moreover, in 1969 — soon after the Supreme Court’s landmark decision in Terry v. Ohio, which recognized the legality of the investigatory stop — a federal appellate court held that a person must be aware of a police presence before a seizure can occur. In Yam Sang Kwai v. INS, 411 F.2d 683, 684 (D.C.Cir.), cert. denied, 396 U.S. 877, 90 S.Ct. 148, 24 L.Ed.2d 135 (1969), INS officials surrounded Kwai’s place of business. An officer entered the business and confronted Kwai with questions concerning his right to be in this country. See id. Kwai was subsequently arrested and subjected to deportation proceedings on the basis that he had previously been deported from the United States and had not received permission to re-enter the country. See id. at 685. On appeal from his order of deportation, Kwai contended in the Circuit Court of Appeals for the District of Columbia that he had been seized for Fourth Amendment purposes when his place of business was surrounded. See id. at 686. The appellate court rejected this assertion and concluded that because Kwai was not aware of the police presence outside the business, no seizure had occurred at that time:
“It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person.... ” Terry v. Ohio, 392 U.S. [at] 16[, 88 S.Ct. 1868].... Thus the Supreme Court has verbally circumscribed the outer limits of “seizure” under the [F]ourth [A]mendment to mean an accosting of an individual and a restraint of his liberty to depart. We take this to mean that a “seizure” must be personal, not general; that it must contain the element of awareness on the part of both the protagonist and the antagonist; and it must restrain the liberty of the individual to the extent that he is not free to leave. An arrest, under the [F]ourth [A]mendment, cannot be effected in a vacuum. There must be knowledge of the situation on behalf of both the police and the suspect. There can be no seizure where the subject is unaware that he is “seized.” To hold otherwise would *982 be to give substance to an ex parte arrest — a concept we must disregard.
Id. (emphasis supplied).
Although decisions in which a suspect is oblivious to a police presence may be rare (and often unpublished), other state courts, in reliance upon Hodari D. and Kwai, have held that a seizure cannot occur unless the suspect is aware of, and submits to, that police presence and authority. See, e.g., In re Mackey, 124 Idaho 585, 861 P.2d 1250, 1252 (Ct.App.1993) (no seizure where defendant was not aware of police lights or the presence of the chief of police “until he backed into the patrol car. Therefore, it was impossible for Mackey to submit to the chiefs authority as exhibited by the lights, and there was no seizure at the time.” (citing Hodari N)).[6] Further, at least one Florida appellate decision has implied that a defendant must be aware of a police presence before a seizure can occur. In Houston v. State, 925 So.2d 404, 405 (Fla. 5th DCA), review denied, 935 So.2d 1220 (Fla.2006), a drug task-force agent in an unmarked vehicle stopped behind Houston’s parked truck in a manner that prevented Houston from leaving. When the agent approached the driver’s-side window, he observed Houston with white powder in his hand. See id. According to the agent, neither Houston nor his passenger saw the agent before the agent viewed the powder. See id. The agent knocked on the window and asked Houston to step out of the vehicle. See id. Houston refused to comply and, instead, placed the truck in reverse. See id. A second agent smashed the passenger window of the truck and, at that time, Houston stopped the truck and opened the door. See id. A subsequent search revealed cocaine inside Houston’s shirt and a briefcase containing marijuana in the truck. See id. Houston sought to suppress the items seized at the time of his arrest, but the trial court denied the motion. See id.
On appeal, the Fifth District affirmed. See id. The district court noted that the actions of law enforcement were so unobtrusive that neither Houston nor the other occupant of the truck was even aware of the police presence. See id. at 408.[7] The court further noted that Houston initially did not comply with the agent’s request *983 that he open the door until the passenger window was shattered by the second agent. See id. at 409. The Fifth District concluded that it was only at this particular moment that he was seized for purposes of the Fourth Amendment. See id. (citing Hodari D.).
Thus, under applicable case law, G.M. was not seized for Fourth Amendment purposes until he became aware of and submitted to the assertion or display of police authority. The facts of this case support the conclusion that G.M. did not observe the activated lights when the officers arrived, and he became aware of the police presence only when Officer Smith actually appeared at the window of the Lexus. Thus, like the defendant in Houston, G.M. was seized only as Officer Smith identified himself, ordered G.M. to spit out the marijuana, and G.M. complied. Officer Smith had already witnessed G.M. in possession of marijuana at the time he issued the order, and probable cause existed for an arrest. Therefore, we conclude that the seizure of G.M. did not violate the restrictions of the Fourth Amendment, and the trial court correctly denied G.M.’s motion to suppress.
CONCLUSION
Accordingly, we approve the result, but not the reasoning, of the Third District Court of Appeal that the seizure of G.M. under the circumstances here did not violate the Fourth Amendment to the United States Constitution. We disapprove the opinion of the district court below with regard to its discussion and conclusion that observation and awareness of activated emergency lights by G.M. would not have constituted a seizure under these circumstances.
It is so ordered.
CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs in part and dissents in part with an opinion, in which QUINCE, C.J., concurs.

. Officer Smith testified that the emergency lights were activated to identify himself and Officer Cuenca as police officers to the individuals in and around the cars.

. A “blunt” is a cigar that has been hollowed *975 out and filled with marijuana. See Merriam-Webster Online Dictionary, http://www. merriam-webster.com/dictionary/blunt[3] (last accessed Oct. 5, 2009).

. See § 893.13, Fla. Stat. (2006).

. A majority of the High Court subsequently adopted the "free to leave” analysis articulated in Mendenhall for determining whether a seizure has occurred. See, e.g., Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

. Although the officers may have activated their lights to indicate that they were police *980 officers, the United States Supreme Court has held that the subjective intent of police officers is "relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted.” Michigan v. Chesternut, 486 U.S. 567, 575 n. 7, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) (emphasis supplied). Thus, regardless of the officers’ intent in activating the lights, whether a seizure occurred is determined by what a reasonable person in G.M.'s position would have concluded based upon the conduct of the officers. See, e.g., State v. Williams, 185 S.W.3d 311, 318 (Tenn.2006) ("While the officer may have subjectively intended to activate his blue lights solely for his safety and the safety of others on the road, the litmus test is the objective belief of a reasonable person in the position of the defendant, not that of the officer.” (citing Chestemut)).

. See also State v. Yeatts, No. 02CA45, 2002 WL 31888143, at *1, *3 (Ohio Ct.App. Dec.27, 2002) (unreported decision) (no seizure even though police parked behind defendant's truck and activated emergency lights; "[t]he Mendenhall force or show of authority requirement implies that the officer’s particular actions would have had an adverse effect on a reasonable person’s calculus whether to decline the officer’s request or to terminate the encounter. However, an unconscious subject is incapable of exercising any such calculus at all. In that event, the officer's actions cannot function to impair the subject's freedom of movement or his exercise of his liberty interests. Absent that, no seizure occurs for purposes of the Fourth Amendment.”); Commonwealth v. Page, No. K100318, 2002 WL 481159, at *T-*2 (Va.Cir.Ct. Jan.29, 2002) (unreported decision) (defendant not seized where police officer parked behind vehicle and turned on emergency lights; "Since the Defendant was unaware of Officer Taylor until after the officer knocked on the window of the parked car the second time, [the court found] that the Defendant was not seized until he acknowledged the officer’s presence and began rolling down the vehicle's window. At this point, having been alerted to the police presence, a reasonable person in the Defendant’s place would not have felt free to leave.” (citing Hodari D)); State v. Stone, 698 N.W.2d 133, 2005 WL 914459, at *1 (Wis.Ct.App.2005) (table; unpublished decision) (no seizure even though police blocked in defendant's car where defendant was either unconscious or asleep (citing Kwai)).

. The district court specifically noted that the agents did not use their emergency lights as a show of authority. See id. at 408. However, the decision of the district court indicates that, had the agents activated their emergency lights, Houston would have seen them.