LAGOA, J.
The State of Florida (“State”) appeals from the trial court’s order granting appel-lee D.F.’s motion to suppress physical evidence. Because the record supports the trial court’s ruling that D.F. was illegally seized, we affirm the order suppressing the contraband.
I. FACTUAL AND PROCEDURAL HISTORY
During a multi-agency investigatory sweep at an apartment complex, a detective, who was participating as an “eyeball,” observed D.F. discard baggies of suspected marijuana. D.F. was subsequently arrested and transported to the Juvenile Assessment Center (“JAC”). During a search at the JAC, a small bag of marijuana was found hidden in D.F.’s hair. D.F. filed a motion to suppress, contending that this contraband was a product of the initial illegal seizure that occurred during the investigatory sweep, in violation of his Fourth Amendment rights. D.F. was charged with one count of possession of marijuana upon the grounds of a juvenile detention facility in violation of section 985.11, Florida Statutes (2010).
At the suppression hearing, the trial court heard testimony from the following individuals: Detective Fowler, who was present in the “eyeball” vehicle; Officer Narcisse, who participated in the sweep; and D.F. Based on this testimony, the trial court found that at least twenty police officers arrived at the complex in four or five unmarked and six marked police vehicles. The officers, who were wearing bulletproof vests that identified them as police, took “tactical” positions, approached and swarmed the complex with firearms drawn, and made verbal commands such as “police” and “stop.”[1] Some of the officers approached a breezeway between two of the apartment buildings; D.F was seated on a nearby stairway of one of those buildings.[2] Looking through binoculars, Detective Fowler, who was in a vehicle outside the complex, observed D.F. drop baggies of suspected marijuana to the ground. After the initial sweep, Detective Fowler recovered the suspected marijuana and arrested D.F. As to D.F., the trial court noted his testimony that he felt free to leave during the approach, but found that D.F. did not move until the officers instructed him to do so.
The trial court granted the motion to suppress, concluding that based on the totality of circumstances, a reasonable person in D.F.’s position would not have felt free to leave, that D.F. submitted to the *218 police show of authority, and that the seizure was not supported by probable cause, reasonable suspicion, or subject to a warrant exception. As a result, the trial court suppressed the fruit of the illegal seizure. This appeal ensued.[3]
II. ANALYSIS
The issue in this case is whether D.F. was seized as a result of the police’s show of authority at the time D.F. dropped the suspected contraband.[4] As stated in United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), “a person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” See also Caldwell v. State, 41 So.3d 188, 195 (Fla.2010). In addition, the person must submit to the officer’s show of authority. The determination whether a seizure has occurred by a show of authority requires the application of an objective test, and “not whether the citizen perceived that he was being ordered to restrict his movement.” California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); see also Caldwell, 41 So.3d at 195-97. This objective standard is not concerned with the officers’ subjective intent, but with what the officers’ “words and actions would have conveyed to a reasonable, innocent person.” Caldwell, 41 So.3d at 196-97; see also Michigan v. Chesternut, 486 U.S. 567, 574, 576, n. 7, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).
On appeal, the State contends that D.F. was not seized when he discarded the contraband because (1) there was no show of authority directed at D.F. — the officers did not direct their attention towards D.F. or make any commands to him, and (2) D.F. did not submit to the police show of authority. We disagree. First, the trial court’s factual findings are supported by competent, substantial evidence, and therefore cannot be overturned by this Court. Second, the trial court properly applied the law to those factual findings in determining that a reasonable person in D.F.’s position would not feel free to leave and that D.F. submitted to the police show of authority.
As to the State’s first argument, there is sufficient evidence to support the trial court’s finding that a reasonable person in D.F.’s position would believe that the police activity was directed towards him. The record reveals a display of police authority directed towards individuals in the immediate targeted area of the sweep. The officers, who were armed and wearing bullet-proof vests, surrounded the complex, approached the targeted area (of the building corner and breezeway) with guns drawn, announcing “police” and commanding certain persons not to move. It is undisputed that D.F. was sitting on a stairway near the targeted area when the officers made, as conceded by the State, this show of police authority. Detective Fowler testified that, in addition to the breeze *219 way, one of the targeted areas was the corner of the building where D.F. was sitting. He stated that “the stairwell is basically right at the corner of that building!,] ... [t]hey were technically going towards his direction, but not to him[,] .... [the police activity was] not directed at him specifically!,] ... [and][t]hey were directed towards the breezeway and then west of [D.F.], [t]o the west side of the building, but not directly — directed directly towards him.” This evidence demonstrates that D.F. was in, or in close proximity to, the targeted area, and that a large number of officers were approaching this limited area of the building corner and breezeway.
Contrary to the State’s contention, there is no requirement that the officers’ attention during the approach be specifically directed toward D.F. or that the officers direct any command to him. See Hollinger v. State, 620 So.2d 1242, 1243 (Fla.1993) (holding that defendant submitted to show of authority during a drug sweep where “the officers did not actually tell anyone to ‘freeze’ and ... their attention was not specifically directed toward [defendant]”).[5]
With respect to the second argument, the record contains sufficient evidence to support the trial court’s finding that D.F. submitted to the show of authority. It is undisputed that D.F. remained seated on the stairway throughout the incident. Although D.F. testified that he felt free to get up and walk off, he also testified that when he saw the officers he did not move because he did not want the officers to “feel” that he was “running for something or [had done] something,” that if the officers felt he was running, he would have been charged with something, and that he did not move after the officers said “get down” and “don’t move.” Thus, D.F. testified that he felt free to leave but that doing so would have resulted in him being charged. The fact that D.F. did not move supports the trial court’s finding that D.F. submitted to the show of police authority and his decision to remain seated was related to the officers’ presence. See Hollinger, 620 So.2d at 1243 (“A person who flees from a show of authority has not been seized, while a person who remains in place and submissive to the show of authority has been seized.”) (emphasis added).
*220 As the Supreme Court stated in G.M. v. State, 19 So.3d 973, 980 (Fla.2009):[6]
It strains the bounds of reason to conclude that under these circumstances, a reasonable person would believe that he or she was free to end the encounter with police and simply leave. See Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870, 64 L.Ed.2d 497. Moreover, it would be both dangerous and irresponsible for this Court to advise Florida citizens that they should feel free to simply ignore the officers, walk away, and refuse to interact with these officers under such circumstances. Instead, as a matter of safety to both the public and law enforcement officers, we conclude that a citizen who is aware of the police presence under the specific facts presented by this case is seized for Fourth Amendment purposes and should not attempt to walk away from the police or refuse to comply with lawful instructions.
As part of its second argument that D.F. did not submit to the police show of authority, the State contends that Detective Fowler’s testimony establishes that D.F. voluntarily discarded the contraband before the police arrived at the area where he was seated.[7] A review of the testimony does not show that D.F. discarded the contraband before the arrival of the police. Detective Fowler testified that “Well, pri- or to [the officers] coming into my view walking past the respondent in the breezeway, I had my eye on the respondent and the other individual through binoculars. I observed Mr. F. from his left hand throw out what appeared to be some small baggies of marijuana to the ground.” (Emphasis added). However, when asked “at what point during the approach or not during the approach, if that’s the case, did he drop the baggies?” he answered: “Right as the officers coming from the south came into my view. So I don’t know if he saw them further away coming northbound, but as I saw them is when I saw him_” (Emphasis added). Detective Fowler also testified that the officers came from the north and the south parts of the complex and that he could not see the officers in the breezeway. Based on this testimony, we are not persuaded by the State’s contention that Detective Fowler established that D.F. discarded the contraband before the police arrived in the area such that we can reverse the trial court’s findings. We, therefore, conclude that the record contains competent, substantial evidence to support the trial court’s findings that a reasonable person in D.F.’s position would not have felt free to leave, and that D.F. submitted to the police officers’ show of authority.
Accordingly, based on its findings, the trial court correctly applied existing case law in concluding that D.F. was illegally seized and that the evidence obtained must be suppressed. In affirming the trial court’s order, we recognize that, as in Hol-linger, there is record evidence that might support a contrary view. See, e.g., State v. Newton, 737 So.2d 1252, 1252-53 (Fla. 5th *221 DCA 1999) (“Where evidence involved at the suppression hearing supports both a finding of a consensual encounter and a seizure and where the trial judge makes a factual finding that a reasonable person under the circumstances would not feel that he was free to go, the trial court’s decision to suppress the evidence will be affirmed.”) (citing Hollinger, 620 So.2d at 1242). Because, however, there is sufficient evidence to support the trial court’s finding that a reasonable person in D.F.’s position would feel that he was not free to leave and that D.F. submitted to the show of authority, we are compelled to affirm.
Affirmed.

. The testimony established that the officers came in from multiple gate entrances and surrounded the complex.

. Detective Fowler testified that the officers were headed towards the targeted area, which was the corner of the building where D.F. was sitting, along with the breezeway between the two buildings. Detective Fowler testified that narcotics were sold and people congregated in this area.

. The trial court's application of the law to the facts and its legal conclusions are subject to de novo review. See Pagan v. State, 830 So.2d 792, 806 (Fla.2002); State v. Lennon, 963 So.2d 765, 768 (Fla. 3d DCA 2007). However, the “determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record.” State v. Triana, 979 So.2d 1039, 1042 (Fla. 3d DCA 2008); see also Pagan, 830 So.2d at 806.

. The State does not contest the trial court’s finding that the sweeps, which were regularly conducted for “investigatory purposes," were without individualized suspicion. The State also does not dispute that the sweep was a show of police authority.

. The Hollinger opinions indicate that the police, who were conducting a drug sweep, announced “Sheriff’s Office” when they approached a group of people and that Hol-linger was standing approximately three feet away when he dropped a tissue. Hollinger, 620 So.2d at 1242 (stating that several members of the sheriff's department approached a group of people when an officer noticed Hollinger put his hand behind his back and drop a tissue, which contained cocaine rocks); State v. Hollinger, 596 So.2d 521, 522 (Fla. 5th DCA 1992) (stating that officer walked toward Hollinger who was standing approximately three feet from the group located at the north end of the parking lot).
The State concedes that the facts of Hol-linger are "strikingly similar” to this case. It argues, however, that in this case, unlike Hol-linger, the record does not support the trial court's findings that (1) the officers made verbal commands, such as "police, stop” and otherwise ordered individuals to the ground; and (2) the officers swarmed the complex and prevented egress from the complex. The record includes testimony supporting the trial court’s findings: Officer Narcisse and D.F. testified that the officers made verbal commands such as "police,” “get down” and "don’t move.” In addition, Detective Fowler testified that at least twenty officers participated in the sweep coming from multiple entrances around the complex; Officer Narcisse testified that.the officers surrounded the complex; and D.F. testified that during a "blitz,” the officers surrounded the entrances. See L.C. v. State, 23 So.3d 1215, 1217 (Fla. 3d DCA 2009) (stating that all reasonable inferences and deductions from the evidence must be interpreted in a manner most favorable to the trial court’s ruling).

. In G.M., 19 So.3d at 974, two undercover officers, who were in an unmarked car, activated the car's emergency lights, drove across the street, stopped three feet behind two parked cars and approached the car in which G.M was a passenger. The show of authority in the instant "sweep” case is similar to that of Hollinger, and decidedly more coercive than in G.M. See State v. Kasparian, 937 So.2d 1273, 1276 (Fla. 4th DCA 2006) (noting that it "is readily apparent [that] the show of force in Hollinger is far more coercive than two officers walking up to a parked car”).

. The contraband discarded by D.F. at the apartment complex is not at issue in this case. D.F.’s motion to suppress only addressed the small bag of marijuana found in his hair during the search of D.F.’s person when he was transported to the JAC.